**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In the Matter of The Arbitration of certain     :
Controversies Between                           :
                                                :
DUNHILL FRANCHISEES TRUST,                       :        ECF CASE
          Petitioner,            :        Case No. : 07-CV-6940 (VM)
                                                :
v.                                              :
                                                :
DUNHILL STAFFING SYSTEMS, INC.,                  :
          Respondent.            :

---

# MEMORANDUM IN SUPPORT OF MOTION TO
# VACATE ARBITRATION AWARD

GREENBERG TRAURIG, LLP
Attorneys for Respondent Dunhill Staffing Systems, Inc.
200 Park Avenue
New York, New York 10166
(212) 801-9200

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

PERTINENT FACTS AND PROCEDURAL HISTORY .................................3

    A.   Dunhill's Claims ...............................................................5

    B.   The Franchisees' Counterclaims And Defenses .....................6

    C.   The Hearing .....................................................................6

    D.   The Post-Hearing Briefs ....................................................7

ARGUMENT...................................................................................8

POINT I  THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR
EXCEEDED HIS AUTHORITY BY DECIDING AN ISSUE THAT
WAS NOT BEFORE HIM ................................................................8

POINT II  THE AWARD ALSO MUST BE VACATED BECAUSE THE
ARBITRATOR MANIFESTLY DISREGARDED THE APPLICABLE
LAWS ........................................................................................9

    A.   The Arbitrator Manifestly Disregarded The Well-Defined, Explicit
and Clearly Applicable Law Establishing A Franchisor's Disclosure
Obligations. .....................................................................10

        1.   Neither Common-Law Fraud Nor The Federal And New
York Franchise Disclosure Rules Require A Franchisor To
Opine On Whether Prospective Franchisees Have A
Reasonable Chance of Success Without Prior Industry
Experience ..............................................................11

        2.   The Purported Omission Upon Which The Arbitrator Based
His Decision Is Not Even Actionable Under The Federal Or
New York Franchise Disclosure Laws Or Common-Law
Fraud. .....................................................................12

            (a)  The Arbitrator ignored the law that omissions are not
actionable in the absence of a duty to disclose the
specific fact. .....................................................12

            (b)  The Arbitrator ignored the law that "puffery" is not
actionable. ........................................................13

            (c)  The Arbitrator ignored the law that promises and
predictions are not actionable. .............................14

i

B.     The Arbitrator Manifestly Disregarded The Law That Integration Clauses And Disclaimers Preclude Claims Based On Alleged Pre-Contractual Misrepresentations And Omissions................................................15

C.     The Arbitrator Manifestly Disregarded The Law That Prohibits Private Actions For Violations Of The FTC Disclosure Regulations. .............18

D.     The Arbitrator Manifestly Disregarded The Three-Year Statute Of Limitations Barring Claims For Violations Of The New York Act By Three Of The Franchisees. ........................................................................18

POINT III THE AWARD OF ATTORNEYS' FEES MUST BE VACATED BECAUSE IT WAS IN EXCESS OF THE SCOPE OF THE ARBITRATOR'S AUTHORITY..............................................................................19

A.     The Arbitrator Lacked Authority To Award Attorneys' Fees. .........................19

      1.     The Award Of Attorneys' Fees To Franchisees Was Not Authorized By The Franchise Agreements With Dunhill. ...............20

      2.     The Award Of Attorneys' Fees To Franchisees Was Not Authorized By Dunhill's Request For Attorneys' Fees In The Arbitration. .................................................................21

      3.     The Award Of Attorneys' Fees To Franchisees Was Not Authorized By Law ..........................................................................23

B.     The Arbitrator Exceeded His Authority By Relying On Franchisees' Post-Hearing Submissions Regarding Attorneys' Fees..............24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

*Adiel v. Coca-Cola Bottling Co. of N.Y.*, No. 95 Civ. 0725 (WK), 1995 WL 542432 (S.D.N.Y. Sept. 13, 1995) ....................................................................................................18

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d. Cir 1974)....................................18

*American Casual Dining LP v. Moe's Southwest Grill*, 426 F. Supp. 2d 1356 (N.D. Ga. 2006)..........................................................................................................................13, 16

*Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670 (S.D.N.Y. 1998)..................................................................................................................20

*Banco De Seguros del Estados v. Mutual Marine Office, Inc.*, 344 F.3d 255 (2d Cir. 2003)...................................................................................................................................8

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146 (2d Cir. 1995) ...............................................................................................................11

*Basic v. Levinson*, 485 U.S. 224 (1988) ......................................................................................12

*Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, No. 04-3421-cv-SRED, 2006 WL 3825103 (W.D. Mo. Dec. 21, 2006)........................................................................................14

*Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002)..............................................................................................................................16

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993)....................................11

*Briamonte v. Liberty Brokerage, Inc.*, No. 99 Civ. 2735 (LAP), 2000 WL 666350 (S.D.N.Y. May 19, 2000) ..................................................................................................23

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996)...........17

*Brotman v. Sant Cassia Investment Management*, No. 96 Civ. 6727 (PKL), 1997 WL 401671 (S.D.N.Y. July 16, 1997)....................................................................................23

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)....................16

*Cajun Enterprises, Inc. v. Copeland*, 130 F.3d 180 (5th Cir. 1997) ............................................16

*Carlock v. Pillsbury*, 719 F. Supp. 791 (D. Minn. 1989) .................................................13, 15, 16

*Concourse Assocs. v. Fishman*, 399 F.3d 524 (2d Cir. 2005) .........................................................8

*Cook v. Little Ceasar Enterprises., Inc.*, 210 F.3d 653 (6th Cir. 2000) ........................................16

*DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818 (2d Cir. 1997) ..........................10

*Dover Elevator Systems v. United Steel Workers*, No. 2:97 cv 101 B-B,1998 WL 527290
(N.D. Miss. July 2, 1998) ........................................................................................25

*Grand Union Co. v. Cord Meyer Development Co.*, 761 F.2d 141 (2d Cir. 1985) ......................20

*Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998)........................................10

*Hecco Ventures v. Avalon Energy Corp.*, 606 F. Supp 512 (S.D.N.Y. 1985)..............................13

*Hwang v. Dunkin Donuts, Inc.*, 840 F. Supp. 193 (N.D.N.Y. 1994), *aff'd*, 28 F.3d 103 (2d
Cir. 1994)..............................................................................................................18

*Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir. 1989) ..........................................16

*Kennedy v. Josephthal & Co.*, 814 F.2d 798 (1st Cir. 1987)..........................................16

*Kowal v. MCI Communications Corp.*, Civ. A. No. 90-2862 JGP, 1992 WL 121378
(D.D.C. May 20, 1992).................................................................................................13

*Local 1199 v. Brooks Drug Co.*, 956 F.2d 22 (2d Cir. 1992).........................................8

*Mon-Shore Management, Inc. v. Family Media*, Nos. 83 Civ. 2013, 83 Civ. 2014, 83 Civ.
5548 and 83 Civ. 5550, 1985 WL 4845 (S.D.N.Y. Dec. 23, 1985) ...............................18

*Motor City Bagels, LLC v. American Bagel Co.*, 50 F. Supp. 2d 460 (D. Md. 1999)..................16

*New York City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const.,
Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355 (S.D.N.Y. Nov. 21, 2003).......................23

*Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154 (S.D.N.Y. 1996)...................................17

*Pashaian v. Eccelston Properties, Ltd.*, No. 92 civ 5487 (JSM), 1993 WL 322835
(S.D.N.Y. 1993)........................................................................................................18

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv (2d Cir.
August 7, 2007) ...............................................................................................8, 9, 10

*Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146 (S.D.N.Y. 1989) .................................16

*Schwartz v. Newsweek, Inc.*, 653 F. Supp. 384 (S.D.N.Y. 1986).....................................14

*Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376 (S.D.N.Y. 2002), aff'd 92
Fed. Appx. 812 (2d Cir. 2004) ...................................................................................17

*Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972)..........................................10

*Telecom Int'l America Ltd. v. AT & T Corp.*, 280 F.3d 175 (2d Cir. 2001) .........................14, 17

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979)................................................................................................................9

*United Artist Theater Circuit v. Sun Plaza Enterprise Corp.*, 352 F. Supp. 2d 342 (E.D.N.Y. 2005) ......................................................................................................17

*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364 (1987) ...........................................................................................................8

*Vaughn v. General Foods Corp.*, 797 F.2d 1403 (7th Cir. 1986)..................................14

*Wootton Enters., Inc. v. Subaru of Am.*, 134 F. Supp. 2d 698 (D. Md. 2001)..............16

*Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir. 1983) .............................................16

**State Cases**

*All Seasons Resorts, Inc. v. Abrams*, 68 N.Y.2d 81, 506 N.Y.S.2d 10 (1986)..............12

*Baker Boy of Glendale v. 35-63 82nd St. Corp.*, 166 A.D.2d 397 (2d Dep't 1990) .....23

*Bango v. Naughton*, 184 A.D.2d 961 (3rd Dep't 1992)................................................17

*Banner Industries v. Schwartz*, 204 A.D.2d 190 (1st Dep't 1994) ..............................16

*Block v. Plosia*, 390 N.J. Super. 543 (2007)...............................................................25

*Carson v. PaineWebber, Inc.*, 62 P.3d 996 (Colo. App. 2002) ...................................22

*Daily News, L.P. v. Rockwell International*, 256 A.D.2d 13 (1st Dep't 1998), *lv. denied*, 93 N.Y.2d 803 (1999).........................................................................................16, 17

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) ................................................16

*Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc.*, 143 Misc. 2d 124, 540 N.Y.S.2d 131 (Sup. Ct. Onondaga Co. 1988) .......................................................................18

*George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211 (1978) ....................13

*Goldfinger v. Lisker*, 68 N.Y.2d 225 (1986) ...............................................................25

*Gurnee v. Hasbrouck*, 267 N.Y. 57 (1935) .................................................................12

*Lee v. Goldstrom*, 135 A.D.2d 812 (2d Dep't 1987).....................................................16

*Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 604 N.Y.S.2d 65 (1st Dep't. 1993) .........18

*Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493 (1st Dep't 2006) .............20, 22

*State of New York v. McLeod*, 12 Misc.3d 1157, 819 N.Y.S.2d 213 (N.Y.Sup. 2006) ................ 12

*Stewart Tabori Chang, Inc. v. Stewart*, 282 A.D.2d 385 (1st Dep't 2001) .................................... 20

*UBS Warburg v. Auerbach Pollack & Richardson, Inc.*, 294 A.D.2d 245 (1st Dep't 2002) ... 20, 21

## Federal Statutes

9 U.S.C. § 10(a) ........................................................................................................................ 8

9 U.S.C. §10 ............................................................................................................................. 1

## State Statutes

N. Y. CPLR §7506(c) ............................................................................................................. 25

N.Y. CPLR §7511(b)(1)(iii) .................................................................................................. 20

N.Y. CPLR §7513 .................................................................................................................. 22

N.Y. Gen'l Bus. L. §683 ........................................................................................................ 11

New York Franchise Sales Act, N.Y. Gen. Bus. L. §680 ................................................. passim

## Federal Regulations

16 C.F.R. § 436.1 .............................................................................................................. passim

16 C.F.R. § 436.1(a)(16) ....................................................................................................... 11

16 C.F.R. §§ 436.1(a)(2) ....................................................................................................... 11

## Other Authorities

American Arbitration Association Commercial Arbitration Rule R-32(b) ................................... 24

American Arbitration Association Commercial Arbitration Rule R-4(c) ................................... 22

American Arbitration Association Commercial Arbitration Rule R-43(d) ........................... 20, 24

## PRELIMINARY STATEMENT

Dunhill Staffing Systems, Inc. ("Dunhill") submits this memorandum of law in support of its motion pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. §10, to vacate the arbitration award dated May 25, 2007 (the "Award") issued by Michael D. Friedman ("the Arbitrator") in the matter entitled *Dunhill Staffing Systems, Inc. v. Dunhill Franchisee Trust, American Arbitration Association* Case No. 13 181 Y 01674 04.[1]

In the Award, the Arbitrator determined that Dunhill was liable under a "fraud" theory to Dunhill Franchisee Trust (consisting of Michael Lamanna, Elias Zinn, Michael Wilcoxson, Basil Westover and Harvey Auger, collectively, "the Franchisees"). The Arbitrator denied Dunhill's claims for non-payment of royalties against the Franchisees, ordered rescission of the Franchisees' Franchise Agreements with Dunhill, and awarded the Franchisees a total of $2,296,673.12, which included attorneys' fees of $500,000.00.

The crux of the Award was that Dunhill failed to opine in its "Uniform Franchise Offering Circulars and marketing materials...." that "[by] December 2000 [it] knew or should have known that a Dunhill Staffing Systems, Inc. permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business, without prior experience in the industry." (Wolf Aff., Ex. 1, ¶¶1, 2.)

In so deciding, the Arbitrator exceeded his authority in that: (1) the issue of whether Dunhill breached its disclosure duties by failing to characterize the viability of the franchises was never submitted to him; and, (2) he had no authority to award attorneys' fees to the Franchisees (and engaged in fundamentally unfair processes in doing so).

---

[1] A copy of the Award is annexed as Exhibit 1 to the affidavit of Jeffrey H. Wolf, Esq., (herein after, "Wolf. Aff.") submitted in support of this motion.

Further, the Arbitrator's determination ignores well-defined federal and state franchise law brought to his attention. Among the well-established, plainly applicable legal principles that the Arbitrator manifestly disregarded in his Award are:

- The Federal Trade Commission's rule entitled *Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Venture*, 16 C.F.R. § 436.1 (the "FTC Rule"), which governs disclosures by franchisors, does *not* require a franchisor to opine on whether the franchisee has a reasonable chance of success if that franchisee is a new entrant to the business without prior experience in the industry;

- The New York Franchise Sales Act, N.Y. Gen. Bus. L. §680, *et seq.* (the "New York Act"), which requires disclosures that are similar to those mandated by the FTC Rule, does *not* include any special risk factors related to the absence of prior industry experience and, like the FTC Rule, does *not* require a franchisor to opine on whether the franchisee has a reasonable chance of success if that Franchisee is a new entrant to the business without prior experience in the industry;

- In the absence of a specific duty to disclose created by federal or state law, there can be no common-law fraud;

- Integration clauses and risk disclaimers preclude a "fraud" finding predicated on oral or written representations which pre-date the execution of the Franchise Agreements;

- No private right of action exists under the FTC Rule for false or misleading disclosures;

- The three-year statute of limitations under the New York Act barred the rescission claims of three of the four Franchisees.

2

## PERTINENT FACTS AND PROCEDURAL HISTORY[2]

### The Franchise Agreements

Dunhill is an employment staffing company founded more than 50 years ago that has both franchised and company operated temporary and permanent staffing offices throughout the United States.  On January 21, 2000, Dunhill and Franchisees Zinn and Wilcoxson entered into a Franchise Agreement under which Dunhill granted the right to operate a permanent staffing franchise using the Dunhill trademarks.[3]  (Wolf Aff., Ex. 6.)  Subsequently, Dunhill entered into Franchise Agreements with Harvey Auger on October 12, 2000, with Michael Lamanna on June 14, 2001, and with Basil Westover on July 18, 2002.  (Wolf Aff., Exs. 7, 8, 9, respectively.)  Each of the Franchise Agreements provided that New York law was to govern any disputes.

Dunhill delivered to each of the Franchisees, in connection with their acquisition of a Dunhill franchise, a uniform franchise offering circular (the "Uniform Franchise Offering Circular") in accordance with the disclosure requirements of both the FTC Rule and the New York Act.  (Wolf Aff., Exs. 10-13.)

The Uniform Franchise Offering Circulars contained explicit language by which each of the Franchisees acknowledged and agreed that, among other things:  (a) the information contained in the Uniform Franchise Offering Circular superseded any prior representations, and that each Franchisee was not relying on any prior representations;  (b) that Dunhill had not made any representations or guarantees about potential earnings or success and, indeed, the

---

[2] This section is intended simply to provide the Court with the basic, undisputed facts.  Notwithstanding that Dunhill disputes the Franchisees' claims and does not believe that the evidence supported any of the factual determinations made by the Arbitrator, Dunhill is not requesting that this Court review any factual determinations made by the Arbitrator.  Additional background can also be found in the parties' post-hearing briefs, which are attached as Exs. 2-5 to this motion.

[3] Zinn and Wilcoxson and Dunhill also entered into a franchise agreement for a Dunhill temporary placement franchise on the same date.

Franchisees understood and accepted the risks of the business; and, (c) that Dunhill had recommended that the Franchisees conduct their own due diligence before agreeing to purchase the franchises. (*See e.g.*, Uniform Franchise Offering Circular provided to Auger, Wolf Aff., Ex.11 at Bates 006101.)

In addition to these acknowledgements by the Franchisees, the Uniform Franchise Offering Circulars contained Dunhill's disclosure that "the market for permanent placement services is established yet competitive and expanding rapidly, that it will continue to expand, and that the need for such services will continue" (*see id.* at Bates 006020), and Dunhill's disclaimer that "*Dunhill can naturally give no guarantee or warranty of this.*" *Id.* (emphasis added.) So too, in Item 19 of the Uniform Franchise Offering Circulars, Dunhill disclaimed any guarantees of success, and specifically alerted prospective franchisees that Dunhill's representatives were not authorized to furnish oral or written information projecting income or profits, and that actual results would vary from unit to unit. The Uniform Franchise Offering Circulars also included warnings pursuant to the FTC Rule that instructed the Franchisees to read the contract carefully, and stated, "[i]f possible show your contract and this information to an advisor like a lawyer or an accountant." (*See id.* at Bates 006012).

In connection with inquiries the Franchisees made as part of their pre-contract due diligence process, Dunhill also provided them with a printed brochure entitled *Dunhill Staffing Systems, Inc. Explore The Opportunities* (*see* Wolf Aff., Ex. 14), which the Arbitrator referred to in the Award as "marketing materials." The brochure contained marketing information about Dunhill and its franchise system, including many self-promotional statements, as well as

4

disclaimer language.  For example, each brochure stated, "[t]he risks are high and there are no guarantees." (*Id.*).[4]

The Franchise Agreement that each of the Franchisees executed contained an integration clause precluding them from relying upon any prior oral or written representations.  Franchisees Auger, Lamanna, and Zinn/Wilcoxson agreed to the following integration clause:

> This Agreement, and all ancillary agreements executed contemporaneously herewith, constitute the entire agreement between the parties with reference to their subject matter and supersede any and all prior negotiations, understandings, representations and agreements. **You acknowledge that you are entering into this Agreement, and all ancillary agreements executed at the same time, as a result of your own independent investigation of the franchised business and not as a result of any representations about us made by our shareholders, officers, directors, employees, agents, representatives, independent contractors or other Dunhill franchisees** which are contrary of this Agreement or of any offering circular, prospectus, disclosure document or other similar document we have given you under applicable law.   (Emphasis added.)[5]

(*See* Wolf Aff., Ex. 6 at p. 35, Ex. 7 at p. 35-36, Ex. 8 at p. 36-37).

## The Arbitration

### A.     Dunhill's Claims

On June 23, 2004, Dunhill commenced the arbitration before the American Arbitration Association in accordance with arbitration provisions contained in each of the Franchisees' Franchise Agreements.  Dunhill asserted claims against each of the Franchisees for breach of their respective Franchise Agreements arising from non-payment or under-reporting of royalties due Dunhill.

---

[4] In addition, Dunhill's marketing kit also included a pamphlet published by the International Franchise Association entitled *Investigate Before Investing*, which recommended certain due diligence steps for a prospective franchisee. (Wolf Aff., Ex. 15).
[5] Westover's integration clause was similar, with an additional phrase that read that his Franchise Agreement superseded any and all prior negotiations, understandings, representations and agreements; "provided, however, that nothing in this sentence is intended to disclaim the representations we made in the Uniform Franchise Offering Circular that we provided to you." (Wolf Aff., Ex. 9 at p. 64).

**B.    The Franchisees' Counterclaims And Defenses**

In response, on September 10, 2004, the Franchisees filed an Answering Statement and Counterclaims. (Wolf Aff., Ex. 16).  The Franchisees asserted counterclaims of "breach of contract," "failure of consideration," "fraud in the inducement to enter into the contract (fraudulent misrepresentations)," "equitable right of set-off," "termination of the franchise agreement for Cause," and "rescission of the franchise agreement."  In their Pre-Hearing Brief (Wolf Aff., Ex. 17 at p. 2), the Franchisees asserted that their counterclaims and defenses were: "payment," "breach of contract," "failure of consideration," "fraud in the inducement to enter into the franchise agreement(s) [i.e., fraudulent misrepresentations]," "equitable right of set-off," "termination of the franchise agreement for cause," and "unenforceability of the restrictive covenant."

Neither in their Answering Statement and Counterclaims nor in their Pre-Hearing Brief did the Franchisees assert a claim that Dunhill failed to disclose that a Dunhill permanent staffing franchise was no longer viable as of a certain point in time, or that a prospective franchisee did not have a reasonable chance of success as a new business entrant without prior industry experience.

**C.    The Hearing**

The Arbitrator conducted a 13-day hearing between January 16, 2007 and March 8, 2007. During the course of the hearing, the Franchisees, consistent with the claims laid out in their Pre-Hearing Brief, asserted that Dunhill made misrepresentations in connection with the sale of their franchises concerning matters such as the size of the Dunhill franchise system (i.e., the number of franchisees), Dunhill's plans to expand or grow the system, the percentage of revenue generated from Dunhill's Exchange Program (a franchisee fee splitting arrangement), and franchisee earnings projections. The Franchisees never asserted during the hearings that Dunhill

failed to disclose that a Dunhill permanent staffing franchise was no longer viable as of a certain point in time, or that a prospective franchisee did not have a reasonable chance of success as a new business entrant without prior industry experience. (Wolf Aff. ¶¶ 3, 5.)

### D.    The Post-Hearing Briefs

At the conclusion of the hearing, the Arbitrator directed counsel for the parties to simultaneously submit post-hearing briefs in lieu of closing arguments which, by stipulation, were submitted on April 30, 2007. The Arbitrator informed the parties that no further responsive briefs could be submitted, while instructing that the parties should not use the post-hearing briefs to introduce new claims or evidence. (Wolf Aff. ¶ 7)

In the section of their Post-Hearing Brief headed "What This Case Is About," the Franchisees held close to the claims and alleged misrepresentations they had laid out in their Pre-Hearing Brief. (Wolf Aff., Ex. 18 at pp. 1-4.) Again, they did not claim that Dunhill had failed to opine that its franchises no longer presented a viable business opportunity.

Notwithstanding the Arbitrator's directions, the Franchisees asserted arguments and purported evidence in support of their claim for attorneys' fees (despite the lack of authority for such relief in the Franchise Agreements and the applicable statutes and rules). The Franchisees had not raised their attorneys' fees claim during the course of the hearings, Dunhill had never seen their purported evidence for attorneys' fees before receiving the Franchisees' Post-Hearing Brief, and Dunhill was denied an opportunity to review and respond to that evidence.

**ARGUMENT**

**POINT I**

**THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS AUTHORITY BY DECIDING AN ISSUE THAT WAS NOT BEFORE HIM**

The Arbitrator exceeded his authority by deciding an issue that was not before him –

whether Dunhill breached its disclosure duties and/or engaged in common-law fraud by failing to

opine that Dunhill's "permanent placement franchise no longer presented an opportunity with a

reasonable chance of success for new entrants to the business, without prior experience in the

industry." (Wolf Aff., Ex. 1 ¶1.)[6] Therefore, the Court must vacate the Award.

9 U.S.C. § 10(a) (4) requires vacatur of an arbitration award when the arbitrator exceeded

his powers.  The powers of an arbitrator are derived generally from the parties' contractual

agreement to arbitrate.  *See United Paperworkers International Union v. Misco, Inc.*, 484 U.S.

29, 38, 108 S.Ct. 364, 370 (1987).  In applying 9 U.S.C. § 10(a) (4), the Second Circuit focuses

on whether the arbitrators had the power, based on the arbitration agreement, to reach certain

issues, though not on whether those issues were correctly decided.  *Banco De Seguros del*

*Estados v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).  Thus, "the Court must

determine whether the arbitrator acted within the scope of his authority or whether 'the arbitral

award is merely the arbitrator[s] own brand of justice.'"  *Id. (quoting Local 1199 v. Brooks Drug*

*Co.*, 956 F.2d 22, 25 (2d Cir. 1992).  The arbitrator's determination of an issue that neither of the

parties raised must be vacated.  *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, No.

06-1212-cv, at *10-11 (2d Cir. August 7, 2007)[7]; *187 Concourse Assocs. v. Fishman*, 399 F.3d

524, 527 (2d Cir. 2005) (vacating arbitration award on the grounds that the arbitrator exceeded

his authority when he imposed a remedy that neither party asked him to consider).  *See also*

---

[6]  The Arbitrator also lacked authority to award attorneys' fees to the Franchisees.  See Point III, *infra*.
[7]  A copy of the Second Circuit's recent, unreported decision is appended to this memorandum of law.

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) (arbitration award vacated because the arbitrators exceeded their authority by entering an award on a theory of damages that had not been submitted to them by the parties.)

In this case, the Arbitrator based his Award for the Franchisees on his decision of an issue that, as detailed in the discussion of the "Facts" above, neither of the parties had submitted to him, but rather that he took upon himself to decide -- whether Dunhill improperly failed to opine that "[by] December 2000 [it] knew or should have known that a Dunhill Staffing Systems, Inc. permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business, without prior experience in the industry." (Wolf Aff., Ex. 1 ¶1.) In so doing, the Arbitrator exceeded the scope of his authority, and the Award must be vacated.[8]

## POINT II

### THE AWARD ALSO MUST BE VACATED BECAUSE THE ARBITRATOR MANIFESTLY DISREGARDED THE APPLICABLE LAWS

The Award must be vacated even if the Court were to find that the Arbitrator did not exceed his authority, because the Award reflects that the Arbitrator manifestly disregarded the law. It has long been recognized that the grounds for vacating an arbitration award include the judicially created ground that the award was rendered in "manifest disregard of the law." *Porzig v. Dresdner, Kleinwort, Benson, North America LLC, id.*, at *8.

The Court must vacate an arbitration award where the court finds "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it all together,

---

[8]  Additionally, the Arbitrator's determination that Dunhill knew or should have known <u>by December 2000</u>, does <u>not</u> support his award to Franchisees Zinn, Wilcoxson, and Auger, who acquired their franchises from Dunhill <u>before</u> December 2000.

and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997).

While the "manifest disregard of the law" standard is a difficult one to meet, an arbitration award must, nonetheless, be vacated where the arbitrators have ignored the law. *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, *id.*, at *8 (recognizing that court must be deferential, but holding that "[a] decision of an arbitrator, however, is not totally impervious to judicial review"); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972). *See also, Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998) (vacating arbitration award that rejected age discrimination claim, where the arbitrators were correctly advised on the governing law and the evidence was that the firing was age based).

Here, the Arbitrator manifestly disregarded several well-defined and clearly applicable laws, including: (1) the franchisor disclosure laws, which Dunhill satisfied; (2) the law that valid contractual integration clauses and disclaimers bar reliance on representations such as those allegedly made pre-contract to the Franchisees; (3) the law that the Franchisees have no private right of action against Dunhill under the FTC Rule; and, (4) the statute of limitations for claims under the New York Act which barred such claims by all of the Franchisees except Westover (as the Franchisees conceded to the Arbitrator).

## A.    The Arbitrator Manifestly Disregarded The Well-Defined, Explicit and Clearly Applicable Law Establishing A Franchisor's Disclosure Obligations.

A franchisor's disclosure obligations are very specifically prescribed by the FTC Rule regarding uniform franchise offering circulars, with the New York Act requiring similar disclosures. Under common-law fraud, misrepresentations and omissions only would be considered fraudulent if there was a specific duty to disclose created by statute or rule. These laws are well-defined, explicit, and clearly applicable, and the Arbitrator was apprised of them.

None of these applicable laws imposed a requirement that Dunhill opine on the chance of success that a Franchisor without prior industry experience would have. Nevertheless, the Arbitrator ignored these laws in determining that Dunhill acted wrongfully by failing to offer such an opinion to the Franchisees. Therefore, the Court must vacate the Award.

1.    **Neither Common-Law Fraud Nor The Federal And New York Franchise Disclosure Rules Require A Franchisor To Opine On Whether Prospective Franchisees Have A Reasonable Chance of Success Without Prior Industry Experience**

The FTC Rule, 16 C.F.R. § 436.1, requires franchisors to provide prospective franchisees with a uniform franchise offering circular containing specific categories of information.[9] The FTC Rule does *not* require franchisors to disclose the revenues of each of its franchisees, or any other franchisee performance data. And, critically, this all-encompassing federal franchise regulation does not require a franchisor to opine as to whether the franchise opportunity is viable to a prospective franchisee without prior experience in the industry.

The New York Act disclosure requirements are similar to those of the FTC Rule. *See* N.Y. Gen'l Bus. L. §683. As with the FTC Rule, the New York Act does not require a franchisor to opine on whether the franchise opportunity is viable to a prospective franchisee without prior experience in the industry.

The common-law requires no more than the duties prescribed by the FTC Rule or the New York Act. *See e.g., Banque Arabe et Internationale D'Investissement v. Maryland National Bank,* 57 F.3d 146, 156 (2d Cir. 1995); *see also Brass v. American Film Technologies, Inc.,* 987

---

[9] The information that the FTC Rule requires that the franchisor disclose includes the identity and experience of the directors and executive officers of the franchisor as well as the identity of previous franchisees. 16 C.F.R. §§ 436.1(a)(2) and (a)(16). The franchisor must also disclose the names, addresses, and telephone numbers of the ten franchisees nearest to the prospective purchaser, or all franchisees in the state where the prospective purchaser is locating the business, or all of the franchisees. 16 C.F.R. § 436.1(a)(16).

F.2d 142, 152 (2d Cir. 1993) (holding that claim of common-law fraud required showing of a duty to disclose the omitted information); *Gurnee v. Hasbrouck*, 267 N.Y. 57 (1935) (same).

Dunhill specifically apprised the Arbitrator of the foregoing law in its Post-Hearing Briefs. (*See* Wolf Aff., Ex. 2 at pp. 31-33; Ex. 3 at pp. 32-34; Ex. 4 at pp. 32- 34; Ex. 5 at pp. 34-36.) Significantly, the Arbitrator made no findings in the Award that Dunhill failed to disclose any of the information required by the FTC Rule or the New York Act, or that Dunhill misrepresented any required facts. Indeed, the Arbitrator did not even determine that Dunhill had omitted or misrepresented any fact.

### 2.    The Purported Omission Upon Which The Arbitrator Based His Decision Is Not Even Actionable Under The Federal Or New York Franchise Disclosure Laws Or Common-Law Fraud.

Not only was Dunhill clearly not required by any law to opine that a prospective franchisee without prior experience in the business did not have a viable opportunity to succeed, but the purported omission would not even be actionable as fraud or as a violation of the FTC Rule or the New York Act. The Arbitrator was made aware of the clear, applicable law in Dunhill's Post-Hearing Briefs. (*See* Wolf Aff., Ex. 2 at pp. 14-31; Ex. 3 at pp. 15-31; Ex. 4 at pp. 14-32; Ex. 5 at pp. 15-33.)

#### (a)    The Arbitrator ignored the law that omissions are not actionable in the absence of a duty to disclose the specific fact.

Under federal securities laws, from which the franchise disclosure laws are derived,[10] omissions cannot be the basis of claims of fraud if there is no duty to disclose. (*Basic v. Levinson*, 485 U.S. 224, 239 (1988).) So too, to the extent that the Franchisees contended that

---

[10] Cases applying federal securities law are particularly helpful in determining a franchisor's duty to disclose under the New York Act. The New York Act is modeled after New York's securities law, the Martin Act (N.Y. Gen'l Bus. L. Article 23-A), and New York courts defer to federal securities cases in reviewing Martin Act claims. *State of New York v. McLeod*, 12 Misc.3d 1157, 819 N.Y.S.2d 213 (N.Y.Sup. 2006), *citing All Seasons Resorts, Inc. v. Abrams*, 68 N.Y.2d 81, 506 N.Y.S.2d 10 (1986)

Dunhill should have disclosed that its franchise system was declining, fraud claims cannot be based on the failure to characterize facts "such as [through] the use of subjective modifiers like 'favorable' or 'harmful'." (*Kowal v. MCI Communications Corp.*, Civ. A. No. 90-2862 JGP, 1992 WL 121378, at *4 (D.D.C. May 20, 1992) (rejecting claim that defendant committed securities fraud by failing to disclose that alleged shifts in the industry had occurred that allegedly put the defendant at a competitive disadvantage)), or the failure to disclose the alleged deteriorating financial condition of the company (*Hecco Ventures v. Avalon Energy Corp.*, 606 F. Supp 512, 519 (S.D.N.Y. 1985) (holding that company did not commit securities fraud by failing to disclose that company's financial condition was deteriorating because company had no duty to disclose "pejorative characterizations").)

Similarly, a franchisor is not required to disclose a deteriorating financial condition where, for example its franchise system's revenues are declining. *Carlock v. Pillsbury*, 719 F. Supp. 791, 828 (D. Minn. 1989) (*applying New York law*, dismissed claim that the franchisor fraudulently concealed that the franchise system's revenues were declining nationally, holding that the franchisor was under no duty to make such a disclosure.)

### (b)    The Arbitrator ignored the law that "puffery" is not actionable.

To the extent that the Franchisees predicated their claim on vague statements and predictions contained in the Dunhill brochure (Wolf Aff., Ex. 14)[11], the Arbitrator could not have found fraud, as such statements are no more than expressions of opinion, sales talk, or "puffing." *See George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 220 (1978); *American Casual Dining LP v. Moe's Southwest Grill*, 426 F. Supp. 2d 1356, 1364-1365 (N.D. Ga. 2006)

---

[11] The Franchisees alleged misrepresentations and/or omissions regarding the size of the Dunhill system, Dunhill's intention to expand or grow the system, the percentage of revenue to be generated from the Dunhill Exchange Program, earnings projections, training, ongoing support, software, and advertising support. (*See* Wolf Aff., Ex. 17 at pp. 4-17; Ex. 18 at pp. 1-2 and 9-75).

(alleged misrepresentations made orally and in the uniform franchise offering circular that the franchisor had "perfected the system of opening and operating restaurants" held to be non-actionable general commendations or mere expressions of opinion.)

The Seventh Circuit thus held in *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986), that statements about the viability of a franchise system were non-actionable "puffing" as a matter of law, *id.* at 1411-12:

> General Foods' statements regarding the potential of the company were designed to encourage investment by new franchisees and to stimulate the existing franchisees' enthusiasm. On the evidence presented here, the jury could not have found that, at any given moment during the period in question, General Foods or Burger Chef had a firm, present intention to make the System anything other than "viable." . . . That General Foods' idea of viability did not match the Vaughns' expectations is unfortunate — but it is not fraud.    (footnotes omitted).

### (c)    The Arbitrator ignored the law that promises and predictions are not actionable.

To the extent that the Franchisees predicated their fraud claim on mere broken promises, unfulfilled predictions or erroneous conjecture as to future events, the Arbitrator could not have found fraud. The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. *Schwartz v. Newsweek, Inc.*, 653 F. Supp. 384, 389 (S.D.N.Y. 1986). Nor does actionable fraud result from a mere failure to perform promises made. *Telecom Int'l America Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).

Because a claim of fraud must be based upon a statement of a past or existing fact, any statements made by Dunhill about *future* profitability could not provide a basis for the Arbitrator to find fraud. *Schwartz v. Newsweek, Inc.*, 653 F. Supp. 384, 389 (S.D.N.Y. 1986). Where profit projections have been provided to a prospective franchisee, they have been held by courts to be non-actionable puffery. *See Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, No. 04-3421-cv-SRED, 2006 WL 3825103, at *2 (W.D. Mo. Dec. 21, 2006) (franchisor's assurance that

14

prospective franchisee was going to be "driving a truckload of money away . . . every year" and that she was "not going to have to worry about paying . . . bills" held non-actionable because "[p]redictions and projections regarding the future profitability of a business or investment cannot form a basis for fraud as a matter of law." (citations omitted)).

Future predictions of revenue also were found to be non-actionable in *Carlock, supra*. In *Carlock*, Pillsbury represented that once it purchased Haagen-Dazs, it would "turn things around" and "concentrate on building revenues for the shoppes." 719 F. Supp. at 837. In granting summary judgment dismissing the franchisee's misrepresentation claims, the court explained, *Id* at 837:

> "Pillsbury's actual success in operating Haagen-Dazs depended in large part on factors outside of the defendants' control — the economy and competing producers for example — and was therefore beyond defendants' ability to know with certainty. A statement by any of the defendants as to what Pillsbury would be able to achieve with Haagen-Dazs is by its very nature a prediction as to the future which is not actionable as fraud."

**B.    The Arbitrator Manifestly Disregarded The Law That Integration Clauses And Disclaimers Preclude Claims Based On Alleged Pre-Contractual Misrepresentations And Omissions.**

The Court also must vacate the Award to the extent that the Arbitrator predicated his determination on the Franchisees' allegations that the pre-contractual "marketing materials" made misrepresentations and/or omissions.   All of these claims were barred as a matter of clear, explicit and plainly applicable law by the integration clauses contained in the Franchisees' Franchise Agreements and the Uniform Franchise Offering Circulars, and by the disclaimers in the Uniform Franchise Offering Circulars, all of which was brought to the Arbitrator's attention.[12]

---

[12] Significantly, the Arbitrator did not determine that the integration clauses and disclaimers were inapplicable to the Franchisees' claims.

In Dunhill's Post-Hearing Briefs (*see* Wolf Aff., Ex. 2 at p. 17-18, Ex. 3 at p. 18, Ex. 4 at p. 18, Ex. 5 at p. 18), the Arbitrator was informed that an action for fraud in the inducement is precluded under New York law by the integration clauses contained in each of the Franchisees contracts that *specifically* contemplated the claimed oral or written representations. *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1152 (S.D.N.Y. 1989) (holding that franchisee's reliance on alleged misstatements by defendants was unreasonable *as a matter of law* where "[t]he franchise agreement, as well as the offering circular which preceded it, both contained detailed, explicit integration and disclaimer clauses"); *see also Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 2002 WL 24305, at *3-4 (S.D.N.Y. Jan. 8, 2002) (*citing Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-321 (1959)); *Lee v. Goldstrom*, 135 A.D.2d 812 (2d Dep't 1987).[13]

Specifically, disclaimers and integration clauses have been held to bar fraud claims that the franchisor provided false earnings projections (*Motor City Bagels, LLC v. American Bagel Co.*, 50 F. Supp. 2d 460, 471 (D. Md. 1999)), as well as claims that the franchisor fraudulently misrepresented sales revenues of other franchisees. *Carlock*, 719 F. Supp. at 829 (*citing Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 416 (1st Cir. 1989); *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 805 (1st Cir. 1987); *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518 (10th Cir. 1983).) Indeed, New York courts have held it unreasonable as a matter of law for a party to rely on oral representations that conflict with written disclaimers. *Banner Industries v. Schwartz*, 204 A.D.2d 190 (1st Dep't 1994) (fraud claims barred by disclaimers in contract that contradicted alleged misrepresentations and reliance); *Daily News, L.P. v. Rockwell International*, 256 A.D.2d

---

[13] Courts in other jurisdictions have similarly enforced franchise agreement integration clauses. *See e.g. Cook v. Little Ceasar Enterprises., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998); *Cajun Enterprises, Inc. v. Copeland*, 130 F.3d 180, 186 (5th Cir. 1997); *American Casual Dining LP v. Moe's Southwest Grill*, 426 F. Supp. 2d 1356, 1368 (N.D. Ga. 2006); *Wootton Enters., Inc. v. Subaru of Am.*, 134 F. Supp. 2d 698, 715 (D. Md. 2001).

13 (1st Dep't 1998), *lv. denied*, 93 N.Y.2d 803 (1999) (no reasonable reliance on oral representations where fraud claims based on alleged conflict between oral representations and subsequent written contractual terms); *Bango v. Naughton*, 184 A.D.2d 961 (3rd Dep't 1992) (where contract provision contradicts alleged misrepresentation, the conflict between the writing and the oral representation negates the claim of reliance on the latter).

Even if the Franchisees' claims were properly viewed as breach of contract claims, they were barred by the integration clauses and disclaimers.[14]  *Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002), *aff'd* 92 Fed. Appx. 812 (2d Cir. 2004).  As the Court stated in *United Artist Theater Circuit v. Sun Plaza Enterprise Corp.*, 352 F. Supp. 2d 342, 349 (E.D.N.Y. 2005), an integration clause "extinguishes any claims which plaintiff may have asserted based on oral agreements or representations which Defendants allegedly made prior thereto."

In view of the foregoing, the Court must vacate the Arbitrator's Award as being in manifest disregard of the law to the extent that the Award could have been predicated on the Franchisees' claims that Dunhill's "marketing materials" misrepresented the size of the Dunhill system, Dunhill's intention to expand or grow the system, the percentage of revenue to be generated from the Dunhill Exchange Program, or its earnings projections.

---

[14] As the Arbitrator was made aware (*see e.g,* Wolf Aff., Ex. 2 at pp. 15-16), the Franchisees' claims were nothing more than breach of contract claims and could not stand as fraud claims at all. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (quoting *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)) (no independent fraud claim unless it is "sufficiently distinct from the breach of contract claim"). As the Second Circuit stated in *Telecom Int'l America Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001):

> [U]nder New York law, where a fraud claim arises out of the same facts as [a] breach of contract claim, with the addition only of an allegation that [the other party] never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract. . . . In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.

(internal citations and quotation marks omitted.)

**C.    The Arbitrator Manifestly Disregarded The Law That Prohibits Private Actions For Violations Of The FTC Disclosure Regulations.**

To the extent that the Arbitrator based the Award upon a determination that Dunhill violated the FTC Rule's disclosure requirements, it would be in manifest disregard of the clear, well-defined, and clearly applicable law that no private right of action exists to enforce the disclosure requirements of the FTC Rule. *Mon-Shore Management, Inc. v. Family Media*, Nos. 83 Civ. 2013, 83 Civ. 2014, 83 Civ. 5548 and 83 Civ. 5550, 1985 WL 4845 (S.D.N.Y. Dec. 23, 1985); *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d. Cir 1974). Though the Franchisees only asserted this claim in their Post-Hearing Brief, the Arbitrator was apprised of the prohibition against private actions. (Wolf Aff., Ex. 2 at p. 32, Ex. 3 at p. 32, Ex. 4 at p. 32, Ex. 5 at p. 34.)

**D.    The Arbitrator Manifestly Disregarded The Three-Year Statute Of Limitations Barring Claims For Violations Of The New York Act By Three Of The Franchisees.**

To the extent the Arbitrator's determination was predicated on alleged violations of the New York Act, it was in manifest disregard of the law because any claims by the Franchisees Lamanna, Auger, and Zinn/Wicoxson were admittedly time-barred. *Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 604 N.Y.S.2d 65 (1st Dep't. 1993); *see also Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc.*, 143 Misc. 2d 124, 540 N.Y.S.2d 131 (Sup. Ct. Onondaga Co. 1988); *Hwang v. Dunkin Donuts, Inc.*, 840 F. Supp. 193 (N.D.N.Y. 1994), *aff'd*, 28 F.3d 103 (2d Cir. 1994); *Adiel v. Coca-Cola Bottling Co. of N.Y.*, No. 95 Civ. 0725 (WK), 1995 WL 542432 (S.D.N.Y. Sept. 13, 1995); *Pashaian v. Eccelston Properties, Ltd.*, No. 92 civ 5487 (JSM), 1993 WL 322835 (S.D.N.Y. 1993). The Arbitrator was apprised of the statute of limitations for the New York Act claims. (Wolf Aff., Ex. 2 at p. 34, Ex. 3 at p. 34, Ex. 4 at p. 35.) Indeed, the Franchisees' counsel conceded to the Arbitrator that these claims were time-barred. (Wolf Aff., Ex. 18 at p. 94.)

In sum, to the extent the Arbitrator predicated the Award on any of the claims asserted by the Franchisees, he manifestly disregarded well-defined and clearly applicable laws which were brought to his attention. These include the specific requirements of the FTC and the New York franchisor disclosure laws; the preclusive effect of valid contractual integration clauses on alleged pre-contract misrepresentations; the absence of a private right of action under the FTC Rule; and the statute of limitations bar for untimely claims under the New York Act by all of the Franchisees except Westover (as the Franchisees conceded to the Arbitrator). Accordingly, the Court must vacate the Award.

## POINT III

### THE AWARD OF ATTORNEYS' FEES MUST BE VACATED BECAUSE IT WAS IN EXCESS OF THE SCOPE OF THE ARBITRATOR'S AUTHORITY

In the Award, the Arbitrator awarded attorneys' fees to the Franchisees in the total amount of $500,000 ($125,000 to each of Franchisees Auger, Lamanna, Westover, and Messers. Zinn and Wilcoxson (together)). (Wolf Aff., Ex. 1 at p. 4.) The Arbitrator's award of attorneys' fees to the Franchisees must be vacated because the Arbitrator lacked the authority to issue such relief. As discussed below, it is well-settled that the power of an arbitrator to award attorneys' fees is limited to extremely narrow circumstances, none of which existed here. In addition, the Arbitrator exceeded his authority because the only evidence the Franchisees presented to him regarding their alleged attorneys' fees was submitted post-hearing without any opportunity for Dunhill to examine it or respond, in violation of the American Arbitration Associations' Commercial Rules, as well as principles of fairness and due process.

### A.    The Arbitrator Lacked Authority To Award Attorneys' Fees.

New York follows the "American Rule" that each party bears its own litigation or arbitration costs, and that an arbitrator does not have the authority to award attorneys' fees to a

party unless such authority is granted in a statute or in the parties' agreement, or if, in the absence of an express statutory or contractual grant of authority, both sides pursue attorneys' fees during the course of the arbitration. *Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493 (1st Dep't 2006); *UBS Warburg v. Auerbach Pollack & Richardson, Inc.*, 294 A.D.2d 245 (1st Dep't 2002); *Stewart Tabori Chang, Inc. v. Stewart*, 282 A.D.2d 385 (1st Dep't 2001). *See also, Grand Union Co. v. Cord Meyer Development Co.*, 761 F.2d 141, 147 (2d Cir. 1985) (New York state law "requires, in absence of an agreement among the parties, statutory authorization for such an award.") The AAA arbitrator is assumed to have no more powers than a New York court to award attorneys' fees, and must apply the substantive law that such a court would apply. *See Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 674 (S.D.N.Y. 1998). The American Arbitration Association's Commercial Arbitration Rules likewise provide in R-43(d): "The award of the arbitrator(s) may include: ... (ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."

If the arbitrator awards a party attorneys' fees in the absence of any of these circumstances, the Court must vacate the award. *Matza, id.*; *Stewart Tabori Chang, Inc., id.*; FAA §10(a)(4); NY CPLR §7511(b)(1)(iii). The Court, in this case, must vacate the Arbitrator's award of attorneys' fees to Franchisees because none of the limited exceptions to the American Rule existed here.

### 1.    The Award Of Attorneys' Fees To Franchisees Was Not Authorized By The Franchise Agreements With Dunhill.

The Franchise Agreements that each of the Franchisees entered into with Dunhill expressly provided that Dunhill could be awarded attorneys' fees on claims against the

Franchisees, but the Agreements did not authorize awards of attorneys' fees to the Franchisees on claims they might have against Dunhill.[15]

Under New York law, contractual provisions such as these which provide that one party may recover attorneys' fees, do not allow the Arbitrator to award attorneys' fees to the other party. *Auerbach*, 294 A.D.2d at 246. In *Auerbach*, the First Department affirmed the vacatur of the arbitration award of attorneys' fees to Auerbach, holding:

> The arbitrators also erred in awarding attorneys' fees and expenses to Auerbach, since such an award was beyond their authority. The parties' agreement, governed by New York law, entitled only petitioners to attorneys' fees; there was no reciprocal provision in Auerbach's favor    (internal citations omitted)

Here, the Arbitrator was not authorized by any provision in any of the Franchise Agreements to award attorneys' fees to the Franchisees because, as in *Auerbach*, the Franchisees and Dunhill had agreed in the Franchise Agreements only that Dunhill could be awarded attorneys' fees.

### 2.    The Award Of Attorneys' Fees To Franchisees Was Not Authorized By Dunhill's Request For Attorneys' Fees In The Arbitration.

While New York law and R-43(d) of the American Arbitration Association's Commercial Rules permit an award of attorneys' fees in the absence of express contractual or statutory authority where both sides pursue attorneys' fees in the arbitration, each parties'

---

[15] Article 13 (F) of the Franchise Agreement between Franchisee Auger and Dunhill (Wolf Aff., Ex. 7) provided:

> If we [Dunhill] employ legal counsel in connection with any failure by you or your Owners to comply with this Agreement, you shall reimburse us for the costs and expenses incurred by us as a result of that failure and our enforcement of the terms of this agreement, including, as an example and not a limitation, reasonable fees for ...attorneys ... whether incurred prior to, in preparation for, in contemplation of, or in connection with the filing of any judicial or arbitration proceeding to enforce this Agreement."

The Franchise Agreements entered into by Franchisees Lamanna and Finn/Wilcoxson contained the same provision as that agreed to by Franchisee Auger, while section 28.01 of Franchisee Westover's Franchise Agreement (Wolf Aff., Ex. 9) provided:

> We [Dunhill] will be entitled to recover from you reasonable attorneys' fees ...if we prevail in any action instituted against you to secure or protect our rights under this Agreement, or to enforce the terms of this Agreement, or in any action commenced or joined in by you against us.

conduct in the arbitration must amount to "an 'unmistakably clear' expression of [the] party's intention to waive the rule that parties are responsible for their own attorneys' fees ..., as well as the rule that attorneys' fees are unavailable in arbitration save under limited circumstances ..." *Matza*, 33 A.D.3d at 495. Nothing Dunhill did in the arbitration can be construed as evidencing that it intended to modify the Franchise Agreements so as to authorize the Arbitrator to award attorneys' fees to the Franchisees.

Dunhill's contractually-permitted demand for attorneys' fees in the arbitration did not constitute or evidence its agreement to modify the Franchise Agreements so as to <u>also</u> authorize the Arbitrator to award attorneys' fees to the Franchisees. Nor was the Arbitrator provided such authority by the Franchisees' boilerplate reference to attorneys' fees in the request for relief in their Answering Statement, or, after making no reference to attorneys' fees during the course of the arbitration, their untimely submission of purported evidence of their attorneys' fees as attachments to their Post-Hearing Brief.[16] The New York courts have required significantly more. *Matza*, 33 A.D.3d at 494 (award of attorneys' fees vacated where other party did not pursue demand for attorneys' fees after making boilerplate request in pleading). *See also, Carson v. PaineWebber, Inc.*, 62 P.3d 996, 1000 (Colo. App. 2002) (holding that under Colorado statute identical to NY CPLR §7513, "the parties' parallel requests for attorney fees in their pleadings, without more, are insufficient to show that they explicitly agreed that the arbitrator could award such fees.") Accordingly, the Arbitrator was not authorized by Dunhill's request for attorneys' fees to award attorneys' fees to the Franchisees.

---

[16] Under the R-4(c) of the AAA's Commercial Rules, Dunhill was deemed to have denied the Franchisees' Answering Statement. Pursuant to the Arbitrator's directions that the parties submit simultaneous closing briefs and that reply briefs would not be accepted, Dunhill was not provided with an opportunity to respond to the Franchisees' post-closing submissions regarding the propriety or amount of attorneys' fees. (Wolf Aff. ¶ 12.)

3.    **The Award Of Attorneys' Fees To Franchisees Was Not Authorized By Law**

There is no statutory authority for attorneys fees for the Franchisees' common-law fraud claims.  The Federal Arbitration Act itself does not provide an independent source for an award of attorneys' fees.  *See e.g.*, *New York City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003); *see also*, *Briamonte v. Liberty Brokerage, Inc.*, No. 99 Civ. 2735 (LAP), 2000 WL 666350, at *2 (S.D.N.Y. May 19, 2000); *Brotman v. Sant Cassia Investment Management*, No. 96 Civ. 6727 (PKL), 1997 WL 401671 at *4 (S.D.N.Y. July 16, 1997).

Nor can the Arbitrator's award of attorneys' fees to the Franchisees have been based on violations of the New York Act.  As discussed in Point II (D) above, Franchisees Auger, Lamanna, and Zinn/Wilcoxson did not assert New York Franchise Act claims in the arbitration because, as their counsel conceded, such claims were time-barred.  While Franchisee Westover's New York Act claim was not time-barred, the Arbitrator nevertheless lacked authority because the New York Act only permits an award of attorneys' fees where the franchisee has established that the franchisor engaged in willful violations of the law.  *Baker Boy of Glendale v. 35-63 82nd St. Corp.,* 166 A.D.2d 397, 398-399 (2d Dep't 1990) (attorneys' fees not permitted in absence of evidence that the franchisor's failure to provide a uniform franchise offering circular was willful or material). The Arbitrator made no finding that Dunhill willfully violated the New York Act, and Franchisee Westover presented no proof that would have supported such a conclusion. Accordingly, even as to Franchisee Westover, the Arbitrator lacked statutory authority to award attorneys' fees.

**B.    The Arbitrator Exceeded His Authority By Relying On Franchisees' Post-Hearing Submissions Regarding Attorneys' Fees**

During the course of the arbitration, the Franchisees presented no evidence regarding their attorneys' fees, and, indeed, made no mention of their pursuit of such relief.  It was only in their Post-Hearing Brief that the Franchisees presented evidence and argument regarding their attorneys' fees claim, thereby denying Dunhill any opportunity to respond or object, and violating the Arbitrator's directions and the American Arbitration Association's Commercial Rules.  (Wolf Aff.  ¶¶ 8-12.)  Accordingly, the Arbitrator was not permitted to rely on that evidence and he exceeded his authority in doing so, requiring that his award of attorneys fees be vacated.

R-32 (b) of the American Arbitration Association's Commercial Rules provides that:

> If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence

Here, none of the conditions of R-32(b) were present.  The parties had no agreement with regard to the submission of evidence on attorneys' fees with their post-hearing briefs.  (Wolf Aff. ¶ 8).  So too, the Arbitrator had not directed that they submit such evidence.  (Wolf Aff. ¶ 9). And, Dunhill was not afforded any opportunity to examine and respond to the schedule of legal fees that the Franchisees attached to their Post-Hearing Brief without ever having offered it into evidence during the arbitration.   Accordingly, the Arbitrator had no authority under the American Arbitration Association's Commercial Rules to rely on the Franchisees' evidence in awarding attorneys' fees.

Indeed, the fundamental unfairness of the Arbitrator's award of attorneys' fees to the Franchisees under these circumstances requires that the Court vacate the award.  As the New

24

York Court of Appeals stated in holding that the lower court should have vacated an arbitration award in *Goldfinger v. Lisker*, 68 N.Y.2d 225 (1986):

> [Arbitrators] are expected to 'faithfully and fairly' hear the controversy over which they have been chosen to preside ... and ought to conduct themselves in such a manner as to safeguard the integrity of the arbitration process. Arbitrators must afford the parties the opportunity to present evidence and to cross-examine witnesses ...and may act only upon proof adduced at a hearing of which due notice has been given to each party ... (Internal citations omitted.)[17]

Following these principles, the district court in *Dover Elevator Systems v. United Steel Workers*, No. 2:97 cv 101 B-B,1998 WL 527290, at *2 (N.D. Miss. July 2, 1998) held that "it is fundamentally unfair to take on new evidence after the close of the hearing and not offer the opponent an opportunity for rebuttal. Although arbitration hearings are not conducted under the same set of strict procedural rules as trials in the district court, the presentation of new evidence *ex parte* with the post-hearing brief violates all semblance of fair play."[18]

In relying on the Franchisees' unauthorized post-hearing submissions regarding attorneys' fees, the Arbitrator did precisely what New York, and other courts, recognize and forbid as "fundamentally unfair." Therefore, the award of attorneys' fees to the Franchisees must be vacated.

## CONCLUSION

For the foregoing reasons, the Court must grant Dunhill's motion to vacate the arbitration Award in its entirety. At the very least, the Court should vacate that portion of the Award granting the Franchisees the aggregate sum of $500,000 in attorneys' fees.

---

[17] New York CPLR §7506(c) likewise requires that in any arbitration, "[t]he parties are entitled to be heard, to present evidence and to cross-examine witnesses."

[18] Some courts have required that a party seeking attorneys' fees in arbitration provide the other side with early notice and justification. *Block v. Plosia*, 390 N.J. Super. 543, 557 (2007) (holding that "parties in arbitration who seek counsel fees will be expected to apprise the opposing party before the arbitration hearing of the legal authority upon which such counsel fees are sought, as an exception to the usual "American Rule" in which each side presumptively bears its own legal expenses.")

RESPECTFULLY SUBMITTED,

DUNHILL STAFFING SYSTEMS, INC.

By: _____
Kenneth Lapatine (KL 3985)
Mark Budoff (MB 7069)
GREENBERG TRAURIG, LLP
200 Park Avenue 15th Floor
New York, New York  10166
(212) 801-9200

Of Counsel:
Jeffrey H. Wolf
GREENBERG TRAURIG, LLP
2375 E. Camelback Road Suite 700
Phoenix, Arizona 85016
(602) 445-8410

*Attorneys for Dunhill Staffing Systems, Inc.*

26