**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In the Matter of the Arbitration of certain
Controversies Between

DUNHILL FRANCHISEES TRUST,

                    Petitioner,

                                                    Case No.: 07-CV-6940 (VM)

v.

DUNHILL STAFFING SYSTEMS, INC.

                    Respondent.

**MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION
TO VACATE ARBITRATION AWARD**

THE RICHARD L. ROSEN LAW FIRM, PLLC
Attorneys for Petitioner Dunhill Franchisees Trust
110 East 59th Street
New York, New York 10022
212-644-6644

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

LEGAL ARGUMENT ............................................................................................... 5

POINT I.    THE ARBITRATOR DID NOT EXCEED HIS AUTHORITY
            BY DECIDING AN ISSUE THAT WAS NOT FORMALLY
            BEFORE HIM ......................................................................................... 5

POINT II.   THE ARBITRATOR DID NOT ENGAGE IN "MANIFEST
            DISREGARD" OF THE LAW................................................................ 10

            A.    The Arbitrator Did Not Engage in "Manifest Disregard" of the Law
                  with Respect to a Franchisor's Disclosure Obligations............................ 12

                  1.    The New York Franchise Sales Act and the Federal
                        Trade Commission Rule ................................................................. 13

            B.    Additional Arguments by Dunhill as to Why it Believes That the
                  Arbitrator Engaged in "Manifest Disregard" of the Law .......................... 16

                  1.    Dunhill Omitted to State Material Facts; The Arbitrator
                        Did Not Ignore the Law That "Puffery" is Not Actionable........... 16

                  2.    Dunhill Omitted to State Material Facts; The Arbitrator
                        Did Not Ignore the Law That Promises and Not Actionable ........ 17

                  3.    The Arbitrator Did Not Engage in Manifest Disregard of
                        the Law by Not Finding That the Integration Clauses and
                        Disclaimers Preclude Claims Based on Alleged Pre-
                        Contractual Misrepresentations and Omissions ........................... 20

POINT III.  THE AWARD OF ATTORNEY'S FEES WAS NOT IN EXCESS
            OF THE SCOPE OF THE ARBITRATOR'S AUTHORITY............................. 22

CONCLUSION ..................................................................................................... 26

# TABLE OF AUTHORITIES

**Federal Cases**

*Abram Landau Real Estate v. Bevona,*
123 F.3d 69, 74 (2d Cir. 1997) .................................................................................. 6

*Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.* case, No. 04-3421 –cv-SRED,
2006 WL 3825103, at *2 (W.D. Mo. Dec. 21, 2006) ........................................ 19

*Banco De Seguros del Estados v. Mutual Marine Office, Inc.,*
344, F.3d 255,262 (2d Cir. 2003) ............................................................................ 7

*Bibeault v. Advanced Health Corp.,*
No.97 Civ. 6026, 2002 WL 24305 (S.D.N.Y. 2002)...................................... 20

*Blue Tee Corp. v. Koehring Co.,*
999 F.2d 633, 636 (2d Cir. 1993) ............................................................................ 5

*Concourse Assocs. v. Fishman,*
399 F.3d 524, 527 (2d Cir. 2005) ............................................................................ 8

*Concourse Beauty School v. Polakov,*
685 F. Supp. 1311 (S.D.N.Y. 1988) ........................................................................ 6

*Dirussa v. Dean Witter Reynolds, Inc.,*
121 F.3d 818, 821 (2d Cir. 1997) *petition for cert. filed,*
66 U.S.L.W. 3355 (U.S. Nov. 3, 1997) (No. 97-773) ..................................... 12

*Duferco International Steel Trading v. T. Klaveness Shipping A/S,*
333 F.3d 383, 389 (2d Cir 2003............................................................................ 11

*Fahnestock & Co. v. Waltman,*
935 F.2d 512, 515 (2d Cir. 1991) .......................................................................... 10

*Folkways Music Publishers, Inc. v. Weiss,*
989 F.2d 108, 111-12 (2d Cir. 1993)...................................................................... 10

*Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
757 F.Supp. 283 (S.D.N.Y. 1991), affirmed 946 F.2d 883 (2 Cir. 1991) ................ 12

*Local 1199, Hospital and Health Care Employees Union v. Brooks Drug Co.,*
956 F.2d 22, 25 (2d Cir. 1992) ................................................................................ 6

*Matter of Andros Compania Maritama, S.A. of Kissavos,*
579 F.2d 691, 704 (2d Cir. 1978) .......................................................................... 12

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,*
858 F.2d 825, 832 (2d Cir. 1988) ........................................................................ 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,*
808 F.2d at 933 ...................................................................................................... 11

*Nimkoff v. Tanner Propp & Farber,*
141 F. Supp.2d 420, 425 (S.D.N.Y. 2001) ........................................................ 11

*Pike v. Freeman,*
266 F.3d 78, 86 (2 Cir. 2001) ............................................................................ 10

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC,*
No. 06-1212-cv, at *10-11 (2d Cir. August 7, 2007) ........................................ 8

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,*
986 F.Supp. 231, 241 (S.D.N.Y. 1997) .............................................................. 11

*Rosenberg v. Pillsbury Co.,*
718 F. Supp. 1146 (S.D.N.Y. 1989) .................................................................... 20

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,*
607 F.2d 649 (5th Cir. 1979) .............................................................................. 9

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 10
484 U.S. 29, 38,108 S.Ct. 364, 98 L.Ed.2d 286 (1987)................................7,10

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
363 U.S. 574, 582-3 [80 S.Ct. 1347, 1353, 4 Ld.2d 1409] (1960) ...................... 7

*Wall Street Associates, L.P. v. Becker Paribas, Inc.,*
818 F. Supp. 679 (S.D.N.Y. 1993) ....................................................................6.7

*Westerebeke Corp. v. Daihatsu Motor Co., Ltd.,*
304 F.3d 200, 220 (2d Cir. 2002) ........................................................................ 7

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
103 F.3d 9 (2d Cir. 1997) ..............................................................................11,12

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,*
126 F.3d 15, 23 (2d. Cir. 1997) .......................................................................... 11

**State Cases**

*A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*
162 Misc.2d 941 (S.Ct.194), *aff'd* 214 A.D.2d 473 (1st Dep't 1995), *aff'd and modified
on other grounds*, 87 N.Y. 2d 574, 663 N.E.2d 890 (Ct. App. 1996) ......................14,17,20

*Banner Industries, Inc. v. Schwartz,*
204 A.D.2d 190, 612 N.Y.S.2d 861 (1st Dep't 1994) ..........................................................21

*Carlock v. Pillsbury*
719 F.Supp. 791 (D. Minn. 1989) ...........................................................................................19

*Danann Realty Corp. v. Harris,*
5 N.Y.2d 317, 320-321 (Ct. App. 1959) .................................................................................20

*Hi Tor Industrial Park, Inc. v. Chemical Bank,*
114 A.D.2d 838, 494 N.Y.S.2d 751 (2d Dep't 1985) ...........................................................21

*Lee v. Goldstrom,*
135 A.D.2d 812 (2d Dep't 1987) ............................................................................................20

*Matter of Matza v. Oshman, Helfenstein & Matza,*
33 A.D.3d 493 (1st Dep't 2006) ...........................................................................................23

*Matter of Warner Bros. Records (PPX Enters.),*
7 A.D.3d 330 (1st Dep't 2004) .............................................................................................23

*Millerton Agway Coop. v. Briarcliff Farms,*
17 N.Y.2d 57, 268 N.Y.S.2d 18(Ct. App. 1966) ..................................................................20

*Steinhardt Group, Inc. v. Citicorp,*
272 A.D. 255, 708 N.Y.S.2d 91 (1st Dep't 2000) .................................................................21

*Tahini Investments, Ltd. v. Bobrowsky,*
99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984) ............................................................21

**Federal Statutes**

9 U.S.C. §10(a)(4) ....................................................................................................................6

**State Statues**

New York General Business Law §683(2)(o) ........................................................................15

New York General Business Law §687 ..............................................................................14,15

New York General Business Law §691(4) .................................................................22,23

New York Franchise Sales Act; N.Y. General Business Law §680 .........................passim

**Federal Regulations**

16 C.F.R. §436.1 ................................................................................13,14,15,22

FTC Summary of the Franchise Rule (Introduction) CCH ¶ 6021 ...................................14

FTC Summary of the Franchise Rule CCH ¶ 6025 .........................................................15

§5 of the Federal Trade Commission Act (15 U.S.C. §57(a)) .................................15

**Other Authorities**

American Arbitration Association Commercial Arbitration Rule 43(d) ..................6,22,24

## PRELIMINARY STATEMENT

The Dunhill Franchisees Trust (the "Trust"), on behalf of Basil "Bud" Westover, Harvey Auger, Michael Lamanna and Elias Zinn and Michael Wilcoxson (collectively, the "Franchisees"), each of whom is a member of the Trust and was a former franchisee of Respondent Dunhill Staffing Systems, Inc. ("Dunhill") submits this memorandum of law in opposition to Dunhill's motion to vacate the arbitration award dated May 25, 2007 (the "Award") issued by Michael D. Friedman, Esq. (the "Arbitrator") in the matter entitled *Dunhill Staffing Systems, Inc. v. Dunhill Franchisees Trust*, American Arbitration Association Case No. 13 181 Y 01674 04 (the "Arbitration").[1]

**The Award**:   In the Arbitration, counsel for the parties expressly agreed that the Arbitrator would be making a "standard" award rather than a "reasoned" award. Therefore, the Arbitrator was not required to set forth in the Award, any findings of fact, conclusions of law, or reasons for his findings or conclusions.   This agreement by counsel is reflected in the Arbitrator's Scheduling Order No. 1 dated June 8, 2006[2] (Paragraph 10) which stated:

> "Claimant and Respondent Trust have stipulated that the Award issued by the Arbitrator shall be in the form of a 'standard' (as opposed to a 'reasoned') Award"

The Arbitrator determined that the "Trust Respondents" (the "Franchisees") each of whom had no prior experience in the employment/staffing industry prior to purchasing their Dunhill franchises, were each entitled to the rescission of their Dunhill franchise agreements as well as to compensatory damages of $2,296,673.12, which included an award of attorneys' fees in the amount of $500,000.00 (i.e., $125,000.00 for each of the four Franchisees).  The Arbitrator determined that Dunhill was not entitled to payment under any of its franchise agreements with the Franchisees, nor was it entitled to recover the attorneys' fees that it had sought.

---

[1] A copy of the Award is annexed as Exhibit 5 to the affidavit of Richard L. Rosen, Esq. (hereinafter "Rosen Aff.") submitted in opposition to Respondent's motion to vacate the Award.
[2] A copy of Scheduling Order No. 1 is annexed to Rosen Aff., Exhibit 7.

**The Franchisees' Position:** Dunhill contends that the "crux" of the Award is set forth in Paragraphs 1 and 2 thereof. In fact, that is only one aspect of the Award. Paragraph 3 of the Award sets forth further findings by the Arbitrator which are an integral part of the Award. This paragraph states that: "The evidence presented at the hearings established that…

> 3.   Claimant <u>intended</u> that the Trust Respondents <u>rely</u> on the <u>statements contained</u> in Claimant's <u>Uniform Franchise Offering Circulars and marketing materials</u> in connection with their respective purchases of a franchise.
> Thus Dunhill Staffing Systems, Inc.'s **Uniform Franchise Offering Circulars and marketing materials** given to the Trust Respondents **omitted to state material facts known to Claimant which under the circumstances in their entirety operated as a fraud upon these Respondents.** The evidence also established that the Trust Respondents in the <u>exercise of reasonable diligence would not have been able to discover the omitted material information prior to their acquiring their franchises</u> and trying to make them into successful businesses." (emphasis added.)

Essentially, the Arbitrator determined that based upon the fact that <u>Dunhill omitted to state material facts in its Uniform Franchise Offering Circulars</u> ("UFOC") (the disclosure prospectus which franchisors are required to provide all prospective franchisees) and its <u>marketing materials</u> (which were given to the Franchisees <u>before</u> they purchased their Dunhill franchises), <u>Dunhill committed fraud against the Franchisees when it sold each of them their franchises</u>. Accordingly, the Arbitrator concluded that each of them was entitled to the rescission of its franchise agreement(s) and to compensatory damages (including attorneys' fees).

Paragraph 3 quoted above, can be analyzed as follows:  The Arbitrator found that: (i) Dunhill's <u>Uniform Franchise Offering Circulars</u> ("UFOC") and "<u>marketing materials</u>" **omitted to state material facts**; (ii) Dunhill intended that the Franchisees rely on the statements (and omissions) contained in Dunhill's UFOCs and marketing materials; and (iii) under the circumstances in their entirety, Dunhill's actions operated as a fraud upon the Franchisees; and (iv) the Franchisees "would not have been able to discover the omitted material information prior to their acquiring their franchises."

As set forth in the Rosen Aff. and the Franchisees' post-hearing brief, Dunhill omitted to

state many material facts with respect to a variety of issues[3] which "under the circumstances in their entirety operated as a fraud." These omissions of material facts related to, among other things, the following:

(i) the Exchange Program, whereby the Franchisees' participation in the program was represented as providing each of them with at least 25% (and up to 40%) of additional revenues over what they would otherwise generate; Dunhill omitted to disclose to the Franchisees that the Exchange Program was virtually non-existent and offered no legitimate opportunity to make placements;[4] (ii) the many purportedly "highest quality" and "state of the art" items of services and support that the Franchisees were supposed to receive;[5] (iii) the "essential ingredients" of what the Franchisees thought they were purchasing but did not receive;[6] (iv) the various items contained in Dunhill's marketing materials including the printed brochure (the "Brochure"), Dunhill's form letter, and the "President's Manuals" (which were given to Bud Westover and Michael Lamanna before they purchased their franchise agreements);[7] (v) improper and illegal earnings claims were made to Michael Lamanna, Harvey Auger and Elias Zinn and Michael Wilcoxson (independent from the improper and illegal earnings made to all of the Franchisees in connection with the Exchange Program);[8] (vi) While Dunhill sold Bud Westover a franchise with an exclusive territory for the permanent placement business together with a "right of first refusal" to operate a temporary staffing business, Dunhill omitted to disclose to Bud that a purportedly "former" Dunhill franchisee was still operating both a permanent placement and temporary staffing business from within Bud's exclusive territory with Dunhill's knowledge and approval.[9]

The Franchisees' position is that the Arbitrator's findings in Paragraph 3 of the Award, standing alone, are more than sufficient to justify the Arbitrator's Award and that each of the Franchisees was entitled to the rescission of their franchise agreements as well as compensatory damages. Moreover, the Award being a "standard" award, did not have to include findings of fact, conclusions of law, or reasons for his findings or conclusions.

**Dunhill's Position:**    Dunhill would have this Court believe that the "crux" of the Award is

---

[3] There are too many omissions of material facts to list in this memorandum; They are all set out in the Franchisees' post-hearing brief (Rosen Aff., Exhibit 3).

[4] See Rosen Aff., at pp 3-6; Rosen Aff., Exhibit 3 at pp. 11-13, 16-24, 50-52, 57, 60-61, 65, 73-74.

[5] See Rosen Aff., at p. 7; Rosen Aff., Exhibit 3 at pp. 1, 27-46; 66,-67, and 74.

[6] See Rosen Aff., at p. 3; Rosen Aff., Exhibit 3 at pp. 4-9, 27-46;

[7] See Rosen Aff., at pp.3-4; Rosen Aff., Exhibit 3 at pp. 9-15, 17-18, 21, 23-24, 30, 32-35, 42, 43, 50-52, 57-58, 59-61, 65, and 73.

[8] While Michael Lamanna, Harvey Auger and Elias Zinn/Michael Wilcoxson did not seek a remedy either under the New York Franchise Sales Act or the FTC Rule, nor were any of them granted any such remedy under either statutes, it is clear that Franchisors are prohibited from making any kinds of earnings projections to prospective franchisees (unless it makes a formal disclosure in Item 19 of its UFOC which Dunhill did not do). See Rosen Aff., at p. 7; Rosen Aff., Exhibit 3 at pp. 62-63, 67-69, 70-71, 76-81, 81-84.

[9] See Rosen Aff., at 6 and 7; Rosen Aff., Exhibit 3 at pp. 52-56, 107-109; See Rosen Aff., Exhibit 5, bottom pf page 2.

found in only Paragraphs 1 and 2 of the Award and that the Arbitrator found that <u>there was one single "purported omission"</u> upon which the Arbitrator based his decision to find that Dunhill committed fraud against the Franchisees and that the Arbitrator exceeded his authority in making this finding since it had not been plead with particularity by the Franchisees.[10]

Dunhill states that the "purported omission" was that <u>Dunhill failed to opine in its UFOCs and marketing materials that by December 2000, Dunhill knew or should have known that a Dunhill Staffing Systems, Inc. permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business without prior experience in the industry</u>[11] and that the Arbitrator exceeded his authority because the issue of whether Dunhill breached its disclosure duties by failing to characterize the viability of the franchises "was never submitted to him."

**Why the Franchisees' Position is Correct:** Dunhill's position is unfounded and does not accurately describe what the Award says. While the Arbitrator determined that there came a time when Dunhill was no longer presenting its prospective franchisees with an opportunity with a reasonable chance of success, and that Dunhill did not disclose this fact, there is no reasonable basis to conclude that this "omission" is the <u>only</u> omission of a material fact on which the Arbitrator based his decision. In fact, it is clear that this was not the <u>only</u> omission of material fact that the Arbitrator based his decision upon because in Paragraph 3 of the Award, he states that Dunhill "**omitted to state material <u>facts</u>**, in its UFOCs and marketing materials, that were known to Claimant and which <u>under the circumstances in their entirety operated as a fraud upon</u>" the Franchisees. Nowhere does the Award state that Dunhill omitted to state only "one material fact" and that the omitted fact is the one that is suggested by Dunhill.

The Arbitrator was justified in reaching his ultimate conclusion that the Franchisees were

---

[10] See Dunhill's Memorandum of Law p. 1, 6, and 12.
[11] Id.

entitled to the rescission of their franchise agreements and compensatory damages, based solely upon his findings set forth in Paragraph 3 of the Award. The fact that the Arbitrator also made a further finding (i.e., the finding set forth in Paragraph 1 of the Award), that went beyond this, namely that Dunhill's omissions of material facts were so egregious that there came a time when Dunhill, as a franchisor, no longer presented to franchisees an opportunity with a reasonable chance of success, is merely "icing on the cake" as far as how badly Dunhill defrauded the Franchisees. The omission of material facts that constituted a fraud was sufficient to warrant rescission and damages. The fact that the Arbitrator made this further finding (whether or not that "issue" was "before him") cannot reasonably be used to penalize the Franchisees and strip them of what the Award has given to them.

## **LEGAL ARGUMENT**

### I.    THE ARBITRATOR DID NOT EXCEED HIS AUTHORITY BY DECIDING AN ISSUE THAT WAS NOT FORMALLY BEFORE HIM

Dunhill seeks to vacate the Award pursuant to 9 U.S.C. §10(a)(4) which provides that the Court may make an order vacating the award upon the application of any party to the arbitration "where the arbitrators exceeded their powers."[12] The party moving to vacate an award bears the burden of proving that the arbitration panel exceeded the scope of its authority. *Blue Tee Corp. v. Koehring Co.*, 999 F.2d 633, 636 (2d Cir. 1993). The basis for Dunhill's argument (as stated in Part I of its Memorandum of Law), is that the "Arbitrator exceeded his authority by deciding an issue that was not before him – whether Dunhill breached its disclosure duties and/or engaged in common law fraud by failing to opine that Dunhill's 'permanent placement franchise no longer resented an opportunity with a reasonable chance of success for new entrants to the business, without prior experience in the industry.'" (the "Viable Opportunity" issue.)

---

[12] We note that Dunhill's Memorandum of Law (at p. 8) inaccurately indicates that "9 U.S.C. §10(a)(4) 'requires' vacatur of an arbitration award when the arbitrator exceeded his powers."

All of the franchise agreements entered into between Dunhill and the Franchisees (the "Franchise Agreements") contain similar broad arbitration provisions covering disputes between each of them and Dunhill. For example Harvey Auger's franchise agreement states:

"You and Dunhill agree that any and all disputes (including any dispute regarding or related to this Agreement or the rights and responsibilities of us under this agreement) between you and Dunhill (including claims based on tort, contract or any federal, state or local statute, law, ordinance, or regulation) shall be submitted to binding arbitration. Binding arbitration shall be provided by the American Arbitration Association in accordance with its commercial arbitration rules."[13]

Based upon the arbitration provisions in the Franchise Agreements (the "Arbitration Provisions"), the Arbitrator had a broad grant of authority to hear disputes between the parties. Other than for a small number of inapplicable exceptions, the Arbitrator's authority was not limited with respect to what issues he could hear and determine.

The scope of authority of arbitrators 'generally depends on the intention of the parties to an arbitration, and is determined by the agreement...'" *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74 (2d Cir. 1997) (*quoting Local 1199, Hospital and Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992). It is a well settled federal principal [sic] that arbitration clauses are to be construed as broadly as possible. *Concourse Beauty School v. Polakov*, 685 F. Supp. 1311 (S.D.N.Y. 1988). Arbitration clauses are to be construed broadly, and there is a strong presumption favoring arbitrability. *Wall Street Associates, L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679 (S.D.N.Y. 1993).

"...However, as long as the arbitrator 'is even arguably construing or applying the contract and acting within the scope of his authority' an arbitrator's decision should not be vacated on the ground that the arbitrator exceeded the scope of his authority." *Abram Landau Real Estate v. Bevona, id., quoting United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29,

---

[13] See Wolf Aff., Ex. 7 at p. 32; Elias Zinn/Michael Wilcoxson's dispute resolution provision (for the permanent placement franchise) may be found at Wolf Aff., Ex. 6 at p. 32; Michael Lamanna's dispute resolution provision may be found at Wolf Aff., Ex. 8 at p. 33; and Bud Westover's dispute resolution provision may be located at Wolf Aff., Ex. 9 at p. 23.01;

38, 108 S.Ct. 364, 370 (1987).  This Court in the *Wall Street Associates* case said, "As the Second Circuit has consistently stated, 'if an arbitrator offers even a barely colorable justification for his decision, we will not vacate it on the basis of a claim that he exceeded his authority by misinterpreting the parties' contract.' The Court noted, in citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-3 [80 S.Ct. 1347, 1353, 4 Ld.2d 1409] (1960), that:

> "The application of this policy is clearest when a party assert that a particular type of claim falls outside the scope of an arbitration clause. In such cases, 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

Essentially, the *Wall Street Associates* case stands for the proposition that where a party contends that the arbitration panel has based his Award on a claim (or issue) not properly before the panel, the party challenging the award must show that no proper basis for the award can be inferred from facts of the case.

In support of its position, Dunhill cites *Banco De Seguros del Estados v. Mutual Marine Office, Inc.*, 344, F.3d 255, 262 (2d Cir. 2003) for the proposition that: (i) the Second Circuit focuses on whether the arbitrators had the power to reach certain issues based upon the arbitration agreement, and we note, "though not on whether those issues were correctly decided"; and (ii) that the "Court must determine whether the arbitrator acted within the scope of his authority or whether 'the arbitral award is merely the arbitrator[s] own brand of justice."

The court in the *Banco De Seguros* case found that the arbitrators did not exceed their authority or act in manifest disregard of the law by requiring the foreign reinsurer to post pre-hearing security.  The court stated that, "We have 'consistently accorded the narrowest of readings' to the FAA's authorization to vacate awards pursuant to §10(a)(4)." (*quoting Westerebeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002).  The court also stated, "Where an arbitration clause is broad, as here, arbitrators have the discretion to order

7

remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." Additionally, the court cited *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) which stated that if arbitrators have jurisdiction over a matter, "any subsequent construction of the contract and of the parties' rights and obligations under it" is for the arbitrators to decide.

Dunhill then cites *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv, at *10-11 (2d Cir. August 7, 2007) for the proposition that the arbitrator's determination "of an issue that neither of the parties raised must be vacated." In discussing the "manifest disregard" standard, the Second Circuit noted that "The power...of arbitrators...is dependent on the provisions under which the arbitrators were appointed." The court found that "neither Porzig nor Attorney O'Donnell had agreed to arbitrate a dispute, if in fact there was one, over their fee contract" and concluded that the arbitrators were "plainly without jurisdiction to order Porzig's lawyer to pay back to his client the specified contingency fee."

The facts in the *Porzig* case are distinguishable from the Arbitration, where the Arbitrator had a broad grant of authority pursuant to the Arbitration Provisions. The "Viable Opportunity" issue is one that clearly relates to and arises out of the Franchise Agreements and the rights and responsibilities of the parties. There is no reasonable basis to contend that the "Viable Opportunity" issue is one that is somehow outside the scope of the Arbitrator's authority.

Dunhill's reliance on *Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (vacating an arbitration award on the grounds that the arbitrator exceeded his authority when he imposed a remedy that neither party asked him to consider) is similarly misplaced. In that case, the Second Circuit held that the Arbitrator exceeded his authority when the arbitrator fashioned his own remedy (i.e., returning the employee to work with a "final warning" and a six month probation period) which exceeded the express authority granted to the arbitrator by the parties.

In the Arbitration, the Arbitrator did <u>not</u> fashion a remedy which had not been requested by the Franchisees.  In fact, his Award granted the relief which was expressly sought by the Franchisees, namely rescission of their Franchise Agreements and compensatory damages.

Similarly, the case of *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) relied on by Dunhill, is also distinguishable from the Arbitration.  In the *Totem Marine* case, the Fifth Circuit held that the arbitration panel exceeded its powers when it awarded damages with respect to the "charter hire" issue where (i) no claim for "charter hire" damages was included in defendant's "itemized statement,"; (ii) defendant had <u>conceded in its brief that "charter hire" was not an issue in the arbitration</u>; and (iii) the amount of the damages awarded with respect to the "charter hire" issue was three (3) times larger than any item that was claimed.  The Arbitrator did not make an award of damages (or otherwise) with respect to an issue which the Franchisees conceded was not an issue in the case.

As set forth above, the Arbitrator was given broad authority to make determinations with respect to the disputes between the parties and to determine their respective rights and obligations.  Also, <u>the parties did not submit to the Arbitrator, any specific list of issues which were to be addressed or decided by him.</u>[14]  As the parties agreed that the Arbitrator would issue a "standard" award, the Arbitrator was not required to set forth in the Award, findings of fact, conclusions of law, or the reasons for his findings or conclusions.  While some findings and conclusions are included in the Award, there is no reasonable basis to conclude that the Award was based solely upon the "Viable Opportunity" issue. The Award stated that Dunhill made omissions of material <u>facts</u> in connection with its UFOCs and marketing materials which, under the circumstances and <u>in their entirety</u>, operated as a fraud against the Franchisees.  That finding is more than sufficient to uphold the Award.  Based upon the above stated law, there is no basis

---

[14] See Rosen Aff., at p. 10.

to vacate the Award based on a claim that the Arbitrator "exceeded his authority."

## II.   THE ARBITRATOR DID NOT ENGAGE IN "MANIFEST DISREGARD" OF THE LAW

Federal court review of an arbitral judgment is highly deferential; consequently, such judgments are to be reversed only where the arbitrators have exceeded their authority or made a finding in manifest disregard of the law. *Pike v. Freeman*, 266 F.3d 78, 86 (2 Cir. 2001), *citing Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991). "[A]s long as the arbitrator is even arguably construing or applying the contract within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Pike v. Freeman, Id., quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

In citing *Fahnestock*, 935 F.2d at 516, the Second Circuit in *Pike* stated, "In determining whether arbitrators have 'manifestly disregarded the law,' we have held that there must be something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law, in order to sustain a finding of manifest disregard of the law. The court stated that illustrative of the degree of 'disregard' necessary to support vacatur under this standard is our holding that manifest disregard will be found where an arbitrator understood and correctly stated the law but proceeded to ignore it." [emphasis added.] (internal citation and quotation marks omitted). In *quoting Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111-12 (2d Cir. 1993), the court in *Pike* stated, "[C]ourts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation…Moreover, the law ignored by the arbitrators must be well defined, explicit and clearly applicable if the award is to be vacated." [emphasis added]. (internal quotation marks omitted).

"Manifest disregard 'means more than error or misunderstanding with respect to the law…The error must have been obvious and capable of being readily and instantly perceived by

the average person qualified to serve as an arbitrator.'" (emphasis added). *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 986 F.Supp. 231, 241 (S.D.N.Y. 1997) (*quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobke*r, 808 F.2d at 933 (citations omitted).  See also *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9 (2d Cir. 1997). "Accordingly, the reach of the manifest disregard doctrine is severely limited." (emphasis added). *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., id., quoting Dirussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) (quotations omitted*), petition for cert. filed*, 66 U.S.L.W. 3355 (U.S. Nov. 3, 1997) (No. 97-773).   The court's review under the doctrine of manifest disregard is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is "rare." see, *Duferco International Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir 2003).

In applying this standard, this Court has stated that "an arbitrator's decision 'is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract in terms that offer even a barely colorable justification for the outcome reached in order to withstand judicial scrutiny'" *Nimkoff v. Tanner Propp & Farber*, 141 F. Supp.2d 420, 425 (S.D.N.Y. 2001) *quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d. Cir. 1997). "Indeed an arbitrator need not provide an explanation for their (sic) decision, and a Court is to 'confirm the arbitrator's decision if a ground for the arbitrator's decision can be inferred from the facts of the case.'" (emphasis added). *Nimkoff v. Tanner Propp & Farber, id., quoting Standard Microsystems*, 103 F.3d at 12.

In *Duferco Intern Steel Trading*, the Second Circuit stated, "We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of the law would have yielded the same result. In the same vein, where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a

11

legally correct justification for the outcome." (emphasis added), (citing *Standard Microsystems,*

*id.* at 13, *citing Matter of Andros Compania Maritama, S.A. of Kissavos*, 579 F.2d 691, 704 (2d

Cir. 1978)).

Arbitrators are not required to disclose or explain the reasons underlying the award and the

court will not review the arbitrator's silence with regard to certain claims as evidence that the

arbitrators failed to consider the claim. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757

F.Supp. 283 (S.D.N.Y. 1991), affirmed 946 F.2d 883 (2 Cir. 1991). In *Hough*, this Court stated:

> "Plaintiff's would have this Court conclude <u>that the arbitrators' silence with regard to these
> claims compels a finding that the panel ignored the issues</u>. '[T]he absence of express reasoning
> by the arbitrators [does not] support the conclusion that they disregarded the law.' *Stroh
> Container Co., v. Delphi Industries, Inc.*, 783 F.2d 743, 750 (8th Cir.) *cert denied*, 476 U.S.
> 1141, 106 S.Ct. 2249, 90 L.Ed2d 695 (1986). <u>It is well settled that arbitrators are not required
> to disclose or explain the reasons underlying the award</u>. *United Steelworkers of America v.
> Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424
> (1960). '[T]o allow a court to conclude that it may substitute its own judgment for the
> arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert
> the proper functioning of the arbitral process...' *Stroh*, 783 F.2d at 750 (*citing Sobel v. Hertz,
> Warner & Co.*, 469 F.2d 1211, 1215 (2d Cir. 1972)). <u>As a matter of public policy, the merits of
> an arbitration award are beyond judicial review.</u> *Integrated Sales, Inc. v. Maxwell Corp. of
> America*, 94 A.D.2d 221, 463 N.Y.S.2d 809 (1st Dep't 1983). <u>This Court will not second-guess
> the arbitrators' decision absent a showing of facts supporting modification or vacation of the
> arbitration award</u>." (emphasis added.)

A.    **The Arbitrator Did Not Engage in "Manifest Disregard" of the Law with
      Respect to a Franchisor's Disclosure Obligations**

As discussed above in the Franchisees' "Preliminary Statement" and "Point I" of their

"Legal Argument," Dunhill's position that the fact that the Arbitrator made a finding that Dunhill

knew or should have known that there came a time that its permanent placement franchises no

longer presented an opportunity with a reasonable chance of success to prospective franchisees

who had no prior experience in the industry should be viewed as "icing on the cake" with respect

to how badly Dunhill defrauded the Franchisees. As set forth in Paragraph 3 of the Award,

Dunhill "**omitted to state material facts**, in its UFOCs and marketing materials, that were

known to Claimant and which <u>under the circumstances in their entirety operated as a fraud upon</u>"

the Franchisees. Nowhere does the Award state that Dunhill omitted to state only "one material fact" and that the omitted fact is the one that is suggested by Dunhill. As set forth above, Dunhill omitted to state many material facts with respect to a variety of issues, and the Arbitrator was justified in reaching his ultimate conclusion that the Franchisees were entitled to the rescission of their franchise agreements and compensatory damages, based upon his findings as set forth in Paragraph 3 of the Award. Based upon all of the evidence which came to light during the hearings, and discussed in the Franchisees' post-hearing brief, there is no reasonable basis to conclude that the Arbitrator "based his decision" solely on the Viable Opportunity issue and the fact that Dunhill did not disclose this in its UFOC or marketing materials. The Award found omissions of material facts, a duty to disclose and fraud. The fact that the Arbitrator made the finding that Dunhill's fraud was so egregious that it did not even provide the Franchisees with a viable business opportunity should not be used to <u>penalize</u> the Franchisees and strip them of what the Award has given them.

### 1.    The New York Franchise Sales Act and the Federal Trade Commission Rule

Dunhill asserts that the "common-law" requires no more than the duties prescribed by the Federal Trade Commission's rule entitled *Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Venture*, 16 C.F.R. §436.1 (the "FTC Rule") or the New York Act, and that the Arbitrator "ignored the law that omissions are not actionable in the absence of a duty to disclose the specific fact." <u>First, it must be noted that Bud Westover was entitled to have his Franchise agreement rescinded (based upon various omissions of material facts) and to recover compensatory damages based upon willful and material violations of the New York Act.</u>[15] The Award also stated that Bud was also entitled to recover compensatory

---

[15] See Preliminary Statement; See Rosen Aff., Paragraphs 7, 8, 9, 10, 11 (and corresponding portions of Dunhill's post-hearing brief); Despite the fact that the Award does not specifically indicate a finding by the Arbitrator that Dunhill willfully and materially violated the New York Act with respect to Bud Westover, based upon the case law

13

damages based upon Dunhill's breach of his Franchise Agreement with respect to his exclusive "territory" but that the "compensatory damages were subsumed within the award on his rescission claim."

Dunhill does not dispute the fact that the New York Act was applicable to its sale of the franchises to the Franchisees[16] or that the FTC Rule governs disclosure obligations of Dunhill.[17] Therefore, it is clear that the disclosure obligations and prohibitions set forth in the New York Act and the FTC created duties on Dunhill's behalf, with respect to its disclosure obligations to the Franchisees. It is these disclosure duties that Dunhill breached.

The New York Act's "legislative findings and declaration of policy" states among other things, that "it is the intent of this law to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled." See *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.* 162 Misc.2d 941 (S.Ct. 1994), *aff'd* 214 A.D.2d 473 (1st Dep't 1995), *aff'd and modified on other grounds*, 87 N.Y.2d 574, 663 N.E.2d 890 (Ct. App. 1996).[18] The FTC Rule was adopted in response to widespread evidence of deceptive and unfair practices in connection with the sale of the types of franchised businesses covered by the Rule...These practices often occur when prospective franchisees lack a ready means of obtaining essential and reliable information about their proposed business investment. This lack of information reduces the ability of prospective franchisees either to make an informed investment decision or otherwise verify the representations of the franchisor's salespersons...The Rule requires disclosure of material facts.[19] See FTC Summary

---

cited herein and the Award granting rescission, compensatory damages (and attorneys' fees), it would be improper to conclude that the Arbitrator made no such finding.
[16] See Dunhill's memorandum of law at pp. 18-19. However, Dunhill argues that the 3 year statute of limitations of the New York Act precluded recoveries by all of the Franchisees other than Bud Westover under the New York Act, per se. Of course, this does not preclude recovery under common law fraud or other theories.
[17] See Dunhill's memorandum of law at pp. 2 and 11.
[18] See Rosen Aff., Exhibit 3 at p. 76.
[19] Id.

14

of the Franchise Rule (Introduction) (CCH) ¶6021.

Both the New York Act and the FTC Rule expressly prohibit franchisors from making any type of earnings claims or projections to prospective franchisees, unless the franchisor fully discloses such earnings claims or projections in Item 19 of its UFOC.[20] (None of the UFOCs provided to the Franchisees contained any such disclosure of earnings claims.)

Additionally, §687 of the New York Act (entitled "Fraudulent and Unlawful Practices") states:

"2. It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.
(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.
(c) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." (Emphasis added).

Finally, the FTC Rule provides that "It is an unfair or deceptive act or practice within the meaning of §5 of the Federal Trade Commission Act[21] for any franchisor or franchise broker:

1. to fail to furnish prospective franchisees, within the time frames established by the Rule, with disclosure document containing information containing information on 20 different subjects relating to the franchisor, the franchise business and the terms of the franchise agreement;
2. to make any representations about the actual or potential sales, income, or profits of existing or prospective franchises except in the manner set forth in the Rule;
3. to make any claim or representation (such as in advertising or oral statements by salespersons) which is inconsistent with the information required to be disclosed by the Rule"[22] (Emphasis added.)

Therefore,[23] it is clear that Dunhill had a duty to the Franchisees with respect to what it was required to disclose and what it was prohibited from disclosing. In addition to being prohibited from disclosing any type of earnings claims or projections, Dunhill was also prohibited from making any untrue statements of fact or omitting to state material facts which

---

[20] See N.Y. General Business Law §683(2)(o); and see FTC Summary of the Franchise Rule (CCH) ¶6025.
[21] See 15 U.S.C. §57(a).
[22] See FTC Summary of the Franchise Rule (CCH) ¶6025;
[23] The above cited law (together with a discussion of the law and its application to the facts in the case is included in Rosen Aff., Exhibit 3 at pp. 75-112.

were necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Paragraph 3 of the Award clearly states that Dunhill omitted to state material facts (in its UFOCs and marketing materials) which were known to Dunhill and which under the circumstances in their entirety operated as a fraud upon the Franchisees.

The Award further stated that the evidence also established that Dunhill intended that the Franchisees rely on the statements contained in Dunhill's UFOCs and marketing materials, and further, that the Franchisees, in the "exercise of reasonable diligence would not have been able to discover the omitted material information prior to their acquiring their franchises and trying to make them into successful businesses." Based upon all of the foregoing, there can be no doubt that the Arbitrator was justified in determining that the Franchisees were entitled to the rescission of their Franchise Agreements, based upon common law fraud. The Franchisees' case was based upon much more than Dunhill's failure to disclose that its franchise system was declining or that its financial condition was deteriorating. Those statements are "red herrings" which are meant to distract the court from other issues in the case.

**B.      Additional Arguments by Dunhill as to Why it Believes That the Arbitrator Engaged in "Manifest Disregard" of the Law**

While we believe it is clear that Dunhill's Additional Arguments are wholly without merit, and in that the Franchisees dealt with most of these issues in its post-hearing brief, the Franchisees will respond to these miscellaneous arguments in as concise a manner as possible.

**1.      Dunhill Omitted to State Material Facts; The Arbitrator Did Not Ignore the Law That "Puffery" is Not Actionable**

Dunhill asserts that the Franchisees "predicated their claim" on "vague statements and predictions" contained in the Brochure and that such statements are expressions of opinion, sales talk or "puffing." As set forth above, franchisors have disclosure obligations with respect to prospective franchisees which restrict them from making any earnings projections outside of

Item 19 of its UFOC. Nevertheless, Dunhill made improper and specific earning claims to the Franchisees which Dunhill knew or should have known were false and misleading. Dunhill's omissions of material facts which arose out of the many false and misleading statements which were contained in the Brochure (and the other marketing materials) were <u>specific and tangible</u> (including statements as to what kinds of services and support they would receive from Dunhill when Dunhill had stopped providing those services) and Dunhill intended that the Franchisees would rely on them in purchasing their Dunhill franchises. As per the Award, the Arbitrator found that the omissions of material facts known to Dunhill, under the circumstances in their entirety, operated as a fraud upon the Franchisees. These omissions of material facts went <u>way beyond</u> the examples (e.g., the franchisor had "perfected the system of opening and operating restaurants" or "statements regarding the potential of the company") cited by Dunhill. Dunhill's contention that it engaged in mere "puffery" must be rejected.

**2.    Dunhill Omitted to State Material Facts; The Arbitrator Did Not Ignore the Law That Promises and Predictions are Not Actionable**

Dunhill argues that the Franchisees predicated their claim on mere broken promises, unfulfilled predictions and erroneous conjecture as to future events, and that a claim of fraud must be based upon a statement of past or existing fact.

As set forth in the Franchisees' post-hearing brief, the Arbitrator was entitled to find that Dunhill's disclosure obligations to its prospective franchisees are set forth not only in its UFOCs and franchise agreements, but also in all of the other writings which are distributed to prospective franchisees before they sign their franchise agreement. In *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, *id.* at 947, *aff'd* 214 A.D.2d 473 (1st Dep't 1995), *aff'd and modified on other grounds*, 87 N.Y.2d 574, 663 N.E.2d 890 (Ct. App. 1996), the court held that the Franchisee was entitled to rely on the written statements and representations contained in the Franchisor's "promotional literature." Similarly, the

Franchisees were entitled to rely on the various statements contained in Dunhill's Brochure (as well as the other marketing materials provided to the Franchisees. For example, the Brochure (which was provided to each Franchisee as promotional literature), in describing the benefits of the Exchange Program, stated the following:

> "Dunhill Exchange Program: Through Dunhill, you become part of a cooperative network of offices giving you access to national and international candidates for challenging assignments. We encourage and support active cooperation between our offices. <u>Today, almost 25% of our placements are a direct result of the exchange network</u>." (emphasis added.)

That statement, "<u>Today, almost 25% of our placements are a direct result of the exchange network</u>" is a <u>specific</u>, "<u>statement of a past or existing fact</u>" which Dunhill knew or should have known was false and misleading. As borne out by the evidence presented at the hearings, Dunhill intended to defraud the Franchisees into purchasing their franchises based upon this statement. Dunhill omitted to disclose that the "exchange report" which was prepared utilizing information supplied by Dunhill, indicated that the "exchange rate" (e.g., business generated by the Exchange Program) was only 4% (as opposed to 25%). Dunhill omitted to disclose that the data which was purportedly used by Dunhill to support its representations to the Franchisees that they would earn an additional 25% (to 40%) in additional revenues from the Exchange Program dated back to 1993 and that no one at Dunhill had taken any steps (since that time) to verify whether the 25% figure was still accurate.[24] These facts were acknowledged in testimony of Dunhill's own witness under cross-examination. Additionally, Dunhill's statement in its Brochure that <u>its network of 150 offices were there "to assist you"</u> (this reference related to the Exchange Program – how else could other franchise offices "assist them"?) had to have been known by Dunhill to be a false and misleading statement of past or existing fact. Dunhill omitted to disclose that: (i) its temporary staffing and company owned offices did not participate in the Exchange Program and (ii) the actual number of permanent placement franchises (who

---

24 See Rosen Aff., at pp. 5-6

could be participating in the Exchange Program) who were generating and reporting any meaningful revenues to warrant or engender participation, was only approximately 35 offices.[25]

One example of the many specific factual representations contained in the Brochure as to what the Franchisees would receive from Dunhill is that each Franchisee would be assigned a "Franchise Development Manager" who was supposed to help set up their offices, mentor and assist the Franchisee and his staff and provide ongoing field support and training.[26] Dunhill failed to disclose that virtually no one at the Company was functioning in such a capacity and that no such services were being provided in any meaningful way. The Franchisees were never provided with any such "Franchise Development Manager" and they received virtually no assistance, support, or training from Dunhill.

As set forth above, Dunhill was prohibited from making any earnings claims or projections to the Franchisees (outside of Item 19 of its UFOC), but Dunhill did make such improper earnings projections. Not only did Dunhill make improper earnings projections with respect to the Exchange Program (i.e., that each Franchisee would earn an additional 25% to 40% in additional revenues from the Exchange Program), but Dunhill also made specific earnings projection to Michael Lamanna, Harvey Auger, and Elias Zinn/Michael Wilcoxson (the most egregious of which was the two page written proforma given to Michael Lamanna which included both a "conservative" case and an "expected" case scenario).[27] Both the *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.* case, No. 04-3421–cv-SRED, 2006 WL 3825103, at *2 (W.D. Mo. Dec. 21, 2006), which involved a general statement that the prospective franchisee would be "driving a truckload of money away...every year" and that she was "not going to have to worry about paying ...bills"; and the *Carlock v. Pillsbury* case, 719 F.Supp. 791 (D. Minn.

---

25 Id.
[26] See Rosen Aff., Exhibit 3 at pp. 13, 15, and 111.
[27] See Rosen Aff., at p. 7; See Rosen Aff., Exhibit 6 and Exhibit 3 at pp. 62-63.

1989) which involved a representation by Pillsbury that once it purchased Haagen Dazs, it would "turn things around" and "concentrate on building revenues for the shoppes" are distinguishable from the Franchisees' case where specific earnings projections were made.

3.   **The Arbitrator Did Not Engage in "Manifest Disregard" of the Law by Not Finding That the Integration Clauses and Disclaimers Preclude Claims Based on Alleged Pre-Contractual Misrepresentations and Omissions**

This issue was discussed in some detail in the Franchisees' post-hearing brief.[28]  The court in the *A.J. Temple Marble* case, supra, recognized that the promotional literature provided to a prospective franchisee by a franchisor is, in fact, part of the "franchise offering" presented to him and therefore, found that it was reasonable for the franchisee to rely upon the statements contained therein in making his decision whether or not to purchase the franchise.  The court stated:

> "Keeping in mind the <u>policies underlying the enactment of the Franchise Act and the deliberate incorporation of broad anti-fraud provisions into the statute, the court finds that the Legislature intended to prevent a franchisor from contracting out of the liability imposed on the franchisor under the Act by the inclusion of merger and waiver clauses.</u>"  (emphasis added.)

General disclaimer and merger clauses in a contract do not preclude an action for fraud in the inducement or bar parol evidence concerning fraudulent representations.  *Lee v. Goldstrom*, 135 A.D.2d 812 (2d Dep't 1987).  Also, the parol evidence rule does not operate to exclude evidence of fraudulent oral representations by one party to induce another to enter a written contract.  *Millerton Agway Coop. v. Briarcliff Farms*, 17 N.Y.2d 57, 268 N.Y.S.2d 18 (Ct. App. 1966).

In arguing that an action for fraud in the inducement is precluded under <u>New York law</u> by the integration clauses contained in the Franchise Agreements, Dunhill cites *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146 (S.D.N.Y. 1989).  However, in that case, this Court applied <u>Massachusetts law</u> with respect to the issue of the enforceability of the specific integration clause, and therefore the case is distinguishable.  Dunhill also cites *Bibeault v. Advanced Health Corp.*,

---

[28] We respectfully refer the Court to Rosen Aff., Exhibit 3 at pp. 113-120.

No.97 Civ. 6026, 2002 WL 24305 (S.D.N.Y. 2002) citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-321 (Ct. App. 1959) to support its position. As discussed in Franchisees' post-hearing brief, the court in *Danann*, premised its decision to enforce the specific disclaimer on the "general rule" that:

> "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." (emphasis added.)

We note that several New York cases have held that even where the parties have executed a specific disclaimer of reliance on a seller's representations, a purchaser may not be precluded from claiming reliance on any oral misrepresentations if the facts allegedly misrepresented are "peculiarly within the seller's knowledge." see *Tahini Investments, Ltd. v. Bobrowsky,* 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984); *Hi Tor Industrial Park, Inc. v. Chemical Bank*, 114 A.D.2d 838, 494 N.Y.S.2d 751 (2d Dep't 1985); *Steinhardt Group, Inc. v. Citicorp*, 272 A.D. 255, 708 N.Y.S.2d 91 (1st Dep't 2000). As set forth in the Franchisees' post-hearing brief, virtually all of the facts and circumstances relating to Dunhill's numerous omissions of material facts were peculiarly within Dunhill's knowledge and control. Further, it is significant that the Award, specifically stated that "The evidence also established that the Trust Respondents in the exercise of reasonable diligence would not have been able to discover the omitted material information prior to their acquiring their franchises…" (emphasis added). We note that the *Bibeault* case cited by Dunhill recognized the "peculiar knowledge" exception, but found in that case that the exception did not apply where the plaintiff had a "low cost alternative" to determining the truth or falsity of the oral representation. That case is factually distinguishable from the Franchisees' case.

The First Department has also implied that disclaimers purporting to exculpate

defendants for breaches of duties imposed by law or in the public interest may not be enforced when a party commits intentional acts, i.e., fraudulent acts. see, *Banner Industries, Inc. v. Schwartz*, 204 A.D.2d 190, 612 N.Y.S.2d 861 (1st Dep't 1994). Dunhill's integration clauses must not be permitted to enable Dunhill to shield itself from liability based on its fraudulent conduct as determined by the Arbitrator. As set fort herein, the New York Act and the FTC Rule were expressly enacted in order to govern franchisors' disclosure obligations and to prevent franchisors from perpetrating frauds upon prospective franchisees.

As set forth above, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation of the law. The law which Dunhill contends was ignored by the arbitrator must be well defined, explicit and clearly applicable if the award is to be vacated. At best, Dunhill simply disagrees with the result set forth in the Award. However, Dunhill has failed to establish that the Arbitrator engaged in the manifest disregard of the law.

## III. THE AWARD OF ATTORNEYS' FEES WAS NOT IN EXCESS OF THE SCOPE OF THE ARBITRATOR'S AUTHORITY

This issue was discussed in some detail in the Rosen Aff.[29] As a result of spacing (page limitation) constraints, we shall to discuss this issue in somewhat summary fashion.

The Award included an award of attorneys' fees to each of the Franchisees in the amount of $125,000.00, for a total sum of $500,000.00. Dunhill contends that the Arbitrator lacked the authority to make such an award of attorneys' fees.

As set forth in Point I above, each of the Franchise Agreements provided that disputes between the parties shall be submitted to binding arbitration provided by the American Arbitration Association (the "AAA") in accordance with its commercial arbitration rules. Rule 43(d) of the AAA's commercial arbitration rules states:

"The award of the arbitrator(s) may include:…**(ii) an award of attorneys' fees if all parties**

---

[29] See Rosen Aff, at pp. 11-19.

have **requested such an award or it is authorized by law** or their arbitration agreement." (emphasis added)

As stated above in Point II.(A)(1), Bud Westover was entitled to an award of attorneys' fees under the New York Sales Act (see General Business Law §691(4)) of as a result of Dunhill's willful and material violations of the Act.  G.B.L. §691(4) provides that if a person sells a franchise in violation of the disclosure requirements contained in the statute, said person is liable to the person purchasing the franchise for damages, **and if such violation was "willful and material" for rescission, with interest, reasonable attorneys' fees and court costs**. Therefore, notwithstanding the fact that the Award did not contain a specific finding that Dunhill willfully and materially breached the Act, the Award clearly stated that Dunhill perpetrated a fraud on Bud (and each of the other Franchisees) and that he was entitled to rescission, damages and attorneys' fees and arbitration costs.  Based upon the evidence in the case and the above statute it is logical and reasonable to assume that the Arbitrator did, in fact, make a finding that Bud had a successful claim for rescission under the New York Act and that therefore, an award of attorneys' fees is "authorized by law."

Additionally, based upon AAA Rule 43(d), it is clear that the Franchisees are all entitled to an award of attorneys' fees as "all [both] parties have requested such an award." In support of its position, Dunhill cites *Matter of Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493 (1st Dep't 2006). While *Matza* held that the award of attorneys' fees to petitioner in that case was unauthorized in the absence of request for attorneys' fees by all parties during the arbitration process, the case is distinguishable because the court noted the "uncontradicted" assertion by respondent's attorney that, notwithstanding the respondent's initial request for attorneys' fees, respondent "never pursued attorneys' fees." However, in *Matza,* the court distinguishes another case, *Matter of Warner Bros. Records (PPX Enters*.), 7 A.D.3d 330 (1st Dep't 2004), which is "on all fours" with the case at hand, by stating "Upon reargument, the court's reliance on our

decision in [Matter of Warner Bros. Records (PPX enters.] was misplaced, in that both sides in that case had affirmatively requested attorneys' fees." (emphasis added). Indeed, in the *Warner Bros.* case, the First Department stated:

> "The agreement between the parties did not specifically provide for attorneys' fees in the event of a dispute, but the arbitration clause did incorporate the Commercial Arbitration Rules of the American Arbitration Association. Rule 43(d) authorizes an award of attorneys' fees where, for example, all parties have requested such an award. In as much as both sides are on record as having requested attorney's fees, the award was appropriate." (emphasis added).

It is undisputed that Dunhill requested an award of attorneys' fees and the Franchisees did the same. As set forth in the Rosen Aff.,[30] in addition to requesting attorneys' fees in its Answering Statement, the testimony of Michael Lamanna's, Harvey Auger's and Elias Zinn's examinations before trial indicated that the Franchisees were was seeking an award of attorneys' fees in the case. Additionally, the Franchisees' pre-hearing brief clearly indicated a request for attorneys' fees. Indeed simultaneously with the Franchisees' service of its pre-hearing brief, the Franchisees included as an exhibit to be used at the hearings, a Schedule of Damages[31] (which Mr. Rosen utilized when eliciting direct testimony from each of the Franchisees) which indicated that each of the Franchisees were seeking an award of $125,000.00 for attorneys' fees.

Further, Mr. Rosen's opening statement contained a specific indication that the Franchisees were seeking to recover the attorney's fees that they had incurred in the case. Finally, a request for attorney fees was included in the Franchisees' post-hearing brief, together with a submission of bills and time records evidencing the attorneys' fees billed in the case ("Billing Records"). Based upon the foregoing, it is clear that the Franchisees requested attorneys' fees and they pursued their request for attorneys' fees during the course of the Arbitration.

As a result of the foregoing and the cited case law, it is clear that the Arbitrator acted

---

[30] See Rosen Aff. at pp. 11-19.
[31] See Rosen Aff., Exhibit 10.

within the scope of his authority (pursuant to AAA Commercial Arbitration Rule 43(d)) in awarding the Franchisees attorneys fees of $125,000.00 each.

Dunhill's argument that it was "unfair" that it did not have an opportunity to "respond or object" to the Billing Records has no merit. Dunhill had requested an award of attorneys' fees and it knew that no evidence or documentation supporting the parties' requests for attorneys' fees had been introduced at the hearings. Therefore, as a matter of logic, Dunhill must have believed that the Arbitrator had the authority to make an award of attorneys' fees based upon whatever information (if any) he would be given post-hearing and based upon whatever other factors he felt were relevant to consider.[32] How else could the Arbitrator make an award of attorneys' fees (to either side) post-hearing? Dunhill had an opportunity to submit to the Arbitrator, simultaneously with its post-hearing brief, whatever documentation it wished to. Indeed, had Dunhill chosen to do so (which would have been reasonable and appropriate), the Franchisees would not have had a chance to "respond or object" to such a submission. It was implicitly understood that the Arbitrator had the authority to make a decision, in his discretion, as to whether or not to award attorneys' fees, to whom to award them and how much to award.

Furthermore, based upon the fact that the Arbitrator awarded attorneys' fees in the amount of $125,000.00 to each Franchisee (for a total of $500,000.00) which was the same amount(s) indicated in the Franchisees' Schedule of Damages which was provided to Mr. Wolf (and to the Arbitrator) pre-hearing (and did not award attorneys' fees in the total amount of $752,409.44 which had been requested by the Franchisees' in their post-hearing brief based upon their bills and disbursements), it is apparent that the Arbitrator did not base his award of attorneys' fees on the Billing Records (which Dunhill contends it should have had an opportunity to respond and object to). The Arbitrator's handling of the issue was appropriate and Dunhill

---

[32] See Rosen Aff., at pp. 16-17.

was not unfairly prejudiced.

Based upon the law cited herein and all of the facts and circumstances, the Court should find that the Arbitrator did not act in "manifest disregard" of applicable New York law and acted within the scope of his authority in awarding the Franchisees attorneys' fees herein.

## CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that the Court must deny, in its entirety, Dunhill's motion to vacate the Award, and should confirm the Award in all respects, and grant all of the relief requested in the Petition filed by Petitioner, including judgment for attorneys' fees, costs an disbursements incurred by Petitioner in connection with the instant proceeding.

Dated: New York, New York
      August 27, 2007

RESPECTFULLY SUBMITTED,

DUNHILL FRANCHISEES TRUST

By: _____
      Richard L. Rosen
      Leonard S. Salis
      THE RICHARD L. ROSEN LAW FIRM, PLLC
      110 East 59th Street, 23rd Floor
      New York, New York 10022
      (212) 644-6644