UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of The Arbitration of certain :
Controversies Between :
:
DUNHILL FRANCHISEES TRUST, : ECF CASE
        Petitioner, : Case No. : 07-CV-6940 (VM)
:
v. :
:
DUNHILL STAFFING SYSTEMS, INC., :
        Respondent. :
---
:

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD

GREENBERG TRAURIG, LLP
*Attorneys for Respondent Dunhill Staffing Systems, Inc.*
200 Park Avenue
New York, New York 10166
(212) 801-9200

# TABLE OF CONTENTS

**PAGE**

POINT I – THE FRANCHISEES' ARGUMENTS THAT THE AWARD DID NOT EXCEED THE SCOPE OF THE CLAIMS PRESENTED ARE IMPLAUSIBLE, WITHOUT LEGAL SUPPORT, AND FLY IN THE FACE OF THE ARBITRATOR'S CLEAR AND UNAMBIGUOUS WORDS ................... 1

    1. The Contention That The Arbitrator Did Not Decide The Viability Omission Claim Is An Implausible And Unreasonable Misreading Of The Award ................... 2

    2. Contrary To The Franchisees' Arguments, The Viability Omission Claim Was Not Within The Scope Of The Claims That Were Submitted To The Arbitrator ................... 5

POINT II – THE FRANCHISEES FAIL TO REBUT THAT THE ARBITRATOR MANIFESTLY DISREGARDED NUMEROUS CLEAR LEGAL PRINCIPLES ........... 7

POINT III – THE FRANCHISEES' OPPOSITION TO VACATUR OF THE AWARD OF ATTORNEYS' FEES SIMPLY IGNORES THE CRUCIAL CONTRACT PROVISIONS AND THE LAW ................... 9

CONCLUSION ................... 11

# TABLE OF AUTHORITIES

**PAGE**

**Federal Cases**

*Abram Landau Real Estate v. Bevona*, 123 F.3d 69 (2d Cir. 1997) ................................6

*Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992) ................................8

*Concourse Beauty School v. Polkav*, 685 F. Supp. 1311 (S.D.N.Y. 1988) ................................6

*Filmline (Cross-Country) Prod. Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989) ................................8

*Hough v. Merrill Lynch*, 757 F. Supp. 283 (S.D.N.Y. 1991), *aff'd* 946 F.2d 883 (2d Cir. 1991) ................................4, 5

*John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 561 (8th Cir. 1990) ................................6, 7

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988) ................................6

*Nimkoff v. Tanner Propp & Farber*, 141 F.Supp.2d 420 (S.D.N.Y. 2001) ................................4

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv., WL 2241592 (2d Cir. Aug. 7, 2007) ................................8

*RBFC One, LLC v. Zeeks, Inc.*, 171 Fed.Appx., 902, 903 (2d Cir. 2006) ................................8

*Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 197 (W.D.N.Y. 1998) ................................8

*Wall Street Associates, L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679 (S.D.N.Y. 1993), *aff'd* 27 F.3d 845 (2d Cir. 1994) ................................4, 6

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ................................4

**State Cases**

*In re Arbitration Between UBS Warburg LLC, et al.*, 294 A.D.2d 245, 246 (1st Dep't 2002) ................................10

*Matter of Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493 (1st Dep't 2006) ................................10

*Matter of Warner Bros. Records*, 7 A.D.3d 330 (1st Dep't 2004) ................................10

Respondent Dunhill Staffing Systems, Inc. ("Dunhill") submits this Reply Memorandum of Law in response to the arguments set forth in the Franchisees' Memorandum of Law dated August 27, 2007, the so-called affidavit of the Franchisees' counsel Richard L. Rosen, Esq. ("Rosen Aff." or "Rosen Affidavit"), and the Franchisees' revised Memorandum of Law (the "Opp. Mem."), all submitted by the Franchisees in opposition to Dunhill's motion to vacate the arbitration Award.[1]

**POINT I -THE FRANCHISEES' ARGUMENTS THAT THE AWARD DID NOT EXCEED THE SCOPE OF THE CLAIMS PRESENTED ARE IMPLAUSIBLE, WITHOUT LEGAL SUPPORT, AND FLY IN THE FACE OF THE ARBITRATOR'S CLEAR AND UNAMBIGUOUS WORDS**

A simple reading of the Award shows that the Arbitrator, in clear and unambiguous terms, based the Award on his determination of the "fraud" claim that Dunhill failed to opine that its "permanent placement franchise no longer presented an opportunity with a reasonable chance of success for new entrants to the business, without prior experience in the industry" (the "Viability Omission Claim"). Because this claim was not before the Arbitrator, the Arbitrator plainly exceeded his authority by deciding it, and the Court must vacate the Award.

The Franchisees offer two inconsistent arguments in opposition to this branch of Dunhill's motion: (1) the Arbitrator did <u>not</u> decide the Viability Omission Claim (or only that claim); and/or (2) the Arbitrator properly could, and did, decide the Viability Omission Claim because it was within the scope of the claims that were submitted to him.

---

[1] Dunhill objects to the Franchisees' submission of the Rosen Affidavit. It is almost entirely argument, as opposed to facts, and is a blatant attempt by the Franchisees to circumvent without leave the Court's page limitations for memorandum of law submitted on motions. Indeed, the Franchisees concede as much at page 22 of their memorandum of law. Dunhill also objects to the Franchisees' submission of a "revised" memorandum of law, which was served and filed after the due date of August 27th for their papers established by Local Civil Rule 6.1(b). Dunhill requests that the Court reject the Rosen Affidavit and the "revised" Memorandum of Law. Dunhill particularly requests that that Court reject the request for attorneys' fees set forth in a single reference in "Conclusion" section of the belated "revised" Memorandum of Law.

The Franchisees' arguments rest on a tortured reading of the Arbitrator's straight-forward words and articulated reasons, and they offer no authority for their contention that the Court must likewise distort the Award so as to sustain it. Moreover, the Franchisees' arguments fly in the face of the Arbitrator's concluding statement in the Award:

> "12. This Award is <u>in full settlement of all claims and counterclaims</u> submitted to this Arbitration. <u>All claims not expressly granted herein are hereby, denied</u>." (Emphasis added.) (Affidavit of Jeffrey H. Wolf dated August 9, 2007 ("Wolf Aff.") Ex. 1, p.5)

1. **The Contention That The Arbitrator Did Not Decide The Viability Omission Claim Is An Implausible And Unreasonable Misreading Of The Award**

In their opposition papers, the Franchisees contend that the Arbitrator did not decide the Viability Omission Claims. In doing so, they principally focus on the section at page 2 of the Award in which the Arbitrator expressly set forth his findings of fraud. This section of the Award reads as follows -

> "The evidence presented at the hearings established that:
>
> 1. By December 2000 Claimant [Dunhill] knew or should have known that a Dunhill Staffing Systems, Inc. permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business, without prior experience in the industry;
>
> 2. This information was not clearly set forth in the Claimant's Uniform Franchise Offering Circulars and marketing materials which were given to the Trust Respondents [Franchisees] by Claimant; and
>
> 3. Claimant intended that the Trust Respondents rely upon the statements contained in Claimant's Uniform Offering Circulars and marketing materials in connection with their respective purchases of a franchise."

In the next paragraph in the Award, which is plainly separate from paragraph "3", the Arbitrator summed up the findings stated in the preceding three numbered paragraphs and concludes:

2

> Thus, Dunhill Staffing Systems, Inc.'s Uniform Franchise Offering Circulars and marketing materials given to the Trust Respondents omitted to state material facts, known to Claimant which under the circumstances in their entirety operated as a fraud upon these Respondents. The evidence also established that the Trust Respondents in the exercise of reasonable diligence would not have been able to discover the omitted material information prior to their acquiring their franchises and trying to make them into successful businesses.

There is no ambiguity in the Arbitrator's words or meaning. He found against Dunhill solely on the Viability Omission Claim. The numbered paragraphs set forth the elements of an "omissions" fraud claim: the defendant's knowledge of a fact ("1"); the failure to disclose that fact ("2"); and the defendant's intention to deceive ("3").

The particular fact that the Arbitrator determined Dunhill had failed to disclose was, as the Arbitrator indicated in paragraph "1": "a Dunhill Staffing Systems, Inc. permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business, without prior experience in the industry."

The phrase "This information" in paragraph "2" plainly and unambiguously refers to the specific omission found in paragraph "1." The references to the Uniform Offering Circulars and marketing materials in paragraph "3" repeat the reference in paragraph "2" as to where the omission occurred.

Contrary to the twisted reading espoused by the Franchisees, the paragraph following the numbered paragraphs plainly and unambiguously was a summing up of the findings set forth in the numbered paragraphs, and a statement of the Arbitrator's conclusion from those findings, not, as the Franchisees argue, an enlargement of the categories of allegedly fraudulent statements. The Franchisees ignore the word "Thus", which begins the paragraph, and has only one meaning. Where the Arbitrator intended to

3

make a new finding (in the same paragraph) he simply stated, "The evidence <u>also</u> established ..." (Emphasis added.)

The Court is not required, as the Franchisees' contend, to torture the Arbitrator's clear and unambiguous words and well-articulated reasoning, or adopt implausible readings of the Award. Unlike the cases relied upon by the Franchisees in which the arbitrator neither issued an opinion or delineated the basis, here the arbitrator clearly set forth what he was finding and set forth the elements of the tort. *Hough v. Merrill Lynch*, 757 F. Supp. 283 (S.D.N.Y. 1991), *aff'd* 946 F.2d 883 (2d Cir. 1991), *Wall Street Associates, L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679 (S.D.N.Y. 1993), *aff'd* 27 F.3d 845 (2d Cir. 1994), *Nimkoff v. Tanner Propp & Farber*, 141 F.Supp.2d 420 (S.D.N.Y. 2001), and *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). In the cases cited by the Franchisees, the bare awards forced the courts to examine the full record of the arbitration to try to ascertain what specifically the arbitrators decided and on what bases and to otherwise search for plausible explanations, an exercise which, as the Second Circuit remarked at length in *Standard Microsystems*, they would not have engaged in if the arbitrators had, as here, issued a full opinion. 103 F.3d at 11-14 [2]

Nor does the fact that the parties stipulated that the Arbitrator was not required to render a "reasoned" award require the Court to engage in an exercise as if he had not done so, where he has clearly provided his reasoning. (Opp. Mem. at pp. 1, 9; Rosen Aff. ¶17). As noted in *Standard Microsystems* and *Wall Street Associates*, the need for the

---

[2] The *Wall Street Associates* Court also noted that "<u>unless it is demonstrated that [the] claim was the basis of the award</u> ... [there] was not enough to vacate the award on the grounds that the arbitrators exceeded the scope of their authority", and summed up its decision by noting that in the absence of an opinion "neither side can conclusively say what the grounds of the award was." 818 F. Supp. at 685. (Emphasis added.)

4

Court to search for possible explanations or rationales for an arbitration award is not present where, as here, the arbitrator's opinion itself demonstrates what he did and meant.

Here, the Arbitrator made clear that he was deciding the Viability Omission Claim, and only the Viability Omission Claim. The Arbitrator explicitly provided that:

> "12. This Award is in <u>full settlement of all claims and counterclaims</u> submitted to this Arbitration. <u>All claims not expressly granted herein are hereby, denied.</u>" (Emphasis added.) (Wolf Aff. Ex. 1, p.5)

In reviewing this same award language in an arbitration award, the *Hough* court said that the first sentence "leads the Court to conclude that the arbitration award was a ruling on all claims," and that the second sentence "gives rise to 'a heavy presumption that the arbitrators in fact did address all the claims presented...'" 757 F. Supp. at 291 n.7. In light of the Arbitrator's explicit statement, the Franchisees' assertion that "there is no reasonable basis to conclude that the Award was based solely upon the 'Viable Opportunity' issue" (Opp. Mem. at pp. 9 and 13) is patently absurd.

2. **Contrary To The Franchisees' Arguments, The Viability Omission Claim Was Not Within The Scope Of The Claims That Were Submitted To The Arbitrator**

The Franchisees' alternative argument that the Viability Omission Claim was submitted to the Arbitrator is found primarily in the Rosen Affidavit, with some elements repeated, and others added, in their Memorandum of Law. The argument takes many shapes, including that the arbitration pleadings were "informal" and that the Arbitrator was "flexible" about the claims the parties could try (Rosen Aff. ¶5), and that the parties "did not submit to the Arbitrator any specific list of issues" (Rosen Aff. ¶18, Opp.

5

Mem. at p. 9).³ They also cite cases addressing the issue of whether a claim fell within the scope of the arbitration agreement between the parties. (Opp. Mem. at pp. 6-8) The Franchisees also spend much effort and volume in their papers describing the "variety of bases" and "cornucopia of factors" of their claims. (Rosen Aff. ¶¶ 6 - 8, 10 - 14).

What is readily apparent from the Franchisees' arguments, and particularly their recitation of their claims, is that, notwithstanding the "informality" of the pleadings and the Arbitrator's "flexible" view, the Franchisees simply do not point to any place where the Viability Omission Claim was presented to the Arbitrator. They are unable to do so because, as we have shown, the Viability Omission Claim was not litigated by either party.

The cases cited by the Franchisees involved the issue of arbitrability (that is, whether a claim fell within the scope of the arbitration agreement), and the related issue of whether the court or the arbitrator decides the arbitrability of a dispute, are inapposite.⁴ "Arbitrability" goes to whether the parties' agreement conferred jurisdiction on the arbitrator, not whether a particular claim was presented for the Arbitrator to decide, which is the issue here. *See, John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 561 (8th Cir. 1990). As the 8th Circuit explained in *Morrell*, "The arbitration provision constitutes merely a promise to arbitrate … Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act.… [O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue

---

³ In fact, a list of specific issues was contained in each of the parties pre-hearing and post-hearing submissions and did not include the Viability Omission Claim.
⁴ These cases include *Wall Street Associates, supra, McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988), *Abram Landau Real Estate v. Bevona*, 123 F.3d 69 (2d Cir. 1997), and *Concourse Beauty School v. Polkav*, 685 F. Supp. 1311 (S.D.N.Y. 1988).

to an arbiter, we must look *both to their contract and to the submission of the issue to the arbitrator* to determine his authority.... There are many instances where courts have recognized that the scope of the arbitrator's authority depends, in part, on how the parties framed the issue to be arbitrated." 913 F.2d at 561. (Internal citations and quotes omitted; emphasis in original).

It is thus indisputable that the Arbitrator had no authority to decide the Viability Omission Claim that was not presented to him. Moreover, the Franchisees do not dispute that the Viability Omission Claim is unrecognizable, and that the Arbitrator completely disregarded statutes and case law to invent a new disclosure obligation out of the blue, and then held Dunhill accountable on that unsupportable basis.

**POINT II - THE FRANCHISEES FAIL TO REBUT THAT THE ARBITRATOR MANIFESTLY DISREGARDED NUMEROUS CLEAR LEGAL PRINCIPLES**

The arguments presented by the Franchisees to rebut the conclusion that the Arbitrator manifestly disregarded the law are all premised on the Franchisees' flawed and distorted reading of the Award discussed in Point I above. The Franchisees fail to rebut that the Arbitrator was presented with clear and clearly applicable law regarding Dunhill's franchisor disclosure obligations in light of the integration clause, the risk disclosures and their contractual undertakings and that the Arbitrator could only have ignored well established authority in determining that Dunhill engaged in fraud with regard to the Viability Omission Claim. The Franchisees' contention with regard to their earnings claims and projections, the "exchange program," and other alleged "common" and "individual" misrepresentations is of little avail (*see* Opp. Mem. at pp. 14 - 20; Rosen Aff. ¶¶ 10 - 14), given that the Arbitrator <u>expressly</u> decided only the Viability Omission Claim, and explicitly <u>denied</u> all claims not "expressly" decided. In any event, the

7

Franchisees do not show that any of the law relied upon by Dunhill, and presented to the Arbitrator, was not clear, well-defined, explicit, or clearly applicable.

There can be no doubt that the Arbitrator manifestly disregarded clear and explicit law in determining Westover's claim that Dunhill breached its contractual obligation with respect to the exclusivity of his territory. (Award at 2-3). As was presented to the Arbitrator in Dunhill's post-hearing brief (Wolf Aff. Ex. 5 at pp. 38-40), Westover's Franchise Agreement (Wolf Aff. Ex. 9) required that he give Dunhill notice of any alleged defaults, and it is a well established principle that failure to give the contractually required notice bars a breach of contract claim. *See RBFC One, LLC v. Zeeks, Inc.*, 171 Fed.Appx., 902, 903 (2d Cir. 2006) (summary order) ("RBFC's failure to comply with the applicable notice and cure provisions bars its breach of contract claims"); *see also Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 197 (W.D.N.Y. 1998) (holding that "[w]here as here, the parties have agreed to provide notice and an opportunity to cure prior to suing for performance or asserting termination rights under a contract, those covenants must be adhered to. A party's failure to do so renders ineffective that party's rights to pursue those other remedies") (citing *Filmline (Cross-Country) Prod. Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989)); *Bausch & Lomb Inc., v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992) (holding that "[u]nder New York law, [w]here the contract specifies conditions precedent to the right of cancellation, the conditions must be complied therewith." (internal quotations omitted).) Thus, the Arbitrator's determination that Dunhill breached its contract with Westover must be vacated.

In its recent decision in *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, No. 06-1212-cv., WL 2241592, at *4 (2d Cir. Aug. 7, 2007), the Second Circuit

8

confirmed that the Court needs to look at the entirety of the circumstances in considering if an arbitration award was issued in manifest disregard of the law, and that it may be appropriate to vacate an award even if no single factor rises to sufficient level. Here, it is undisputed by the Franchisees that Dunhill accurately apprised the Arbitrator of the clear law regarding its franchisor disclosure obligations; that Dunhill had no obligation to opine that its "permanent placement franchise no longer presented an opportunity with a reasonable chance of success for new entrants to the business, without prior experience in the industry;" and that Westover's breach of contract claim was barred. It is respectfully submitted that this "perfect storm" of factors requires that the Award be vacated.

**POINT III - THE FRANCHISEES' OPPOSITION TO VACATUR OF THE AWARD OF ATTORNEYS' FEES SIMPLY IGNORES THE CRUCIAL CONTRACT PROVISIONS AND THE LAW**

As Dunhill's moving papers demonstrate, and the Franchisees make no attempt to rebut, the American Rule is that each side pays its own attorneys' fees, and an arbitrator may only award attorneys' fees to a party where he is authorized to do so by the parties' agreement, by law, or where, in the absence of contractual or statutory authority, both sides request attorneys' fees. In opposing vacatur of the Arbitrator's award of attorneys' fees, the Franchisees do not dispute that there was no legal authority or contractual authorization for the Arbitrator to award them attorneys' fees. Instead they argue that the Arbitrator had authority because they and Dunhill both requested attorneys' fees. (Opp. Mem. at p. 23).

In so arguing, they simply ignore the fact that their Franchise Agreements with Dunhill expressly provided that Dunhill could be awarded attorneys' fees on claims against the Franchisees, but did not authorize the Arbitrator to award attorneys' fees to the Franchisees on claims they might have against Dunhill.

9

As we discussed, the New York courts recognize that contract provisions which authorize one party to recover attorneys' fees do <u>not</u> authorize the award of attorneys' fees to the <u>other</u> party. (Dunhill's Motion to Vacate at 24-26). The Franchisees ignore *In re Arbitration Between UBS Warburg LLC, et al.*, 294 A.D.2d 245, 246 (1st Dep't 2002), which vacated the arbitrators' award of attorneys' fees and expenses to one of the sides in the dispute where "[t]he parties' agreement, governed by New York law, entitled only petitioners to attorneys' fees; there was no reciprocal provision in … favor [of the party to whom the award was made]." The Franchisees' attempt to distinguish *Matter of Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493 (1st Dep't 2006), by relying on *Matter of Warner Bros. Records*, 7 A.D.3d 330 (1st Dep't 2004), is unavailing. In *Warner Bros. Records* there was no agreement at all concerning attorneys' fees. *Id.*, at 330-331.

Because Dunhill had a unilateral contractual right to attorneys' fees, its request for attorneys' fees in the arbitration proceeding did not trigger the exception to the American Rule where both sides, who otherwise would not be entitled to fees, request them. The Franchisees' references to attorneys' fees during the course of the arbitration proceeding did not confer authority upon the Arbitrator to award them. Indeed, the Franchisees concede that the Arbitrator had expressly directed the parties to not submit new evidence with their simultaneous post-hearing briefs, but that they nonetheless submitted such alleged support. (Rosen Aff. ¶43).

The Franchisees' argument that the Court should not vacate the award of attorneys' fees to Mr. Westover because the Arbitrator made an "implicit finding" of willful and material violation of the NY Act with regard to Mr. Westover is entirely without merit. The Arbitrator's separate finding for Mr. Westover was explicitly based

on breach of contract, not violations of the NY Act. Again, the Franchisees ignore that the Arbitrator expressly stated in the Award that "[a]ll claims not expressly granted ... are ... denied."

## CONCLUSION

The Court must vacate the Award for the reasons set forth above and in Dunhill's moving papers.

RESPECTFULLY SUBMITTED,
DUNHILL STAFFING SYTEMS, INC.

By: _____
Kenneth A. Lapatine (KL 3985)
Mark H. Budoff (MB 7069)
GREENBERG TRAURIG, LLP
200 Park Avenue, 15th floor
New York, New York 10166
(212) 801-9200

Jeffrey H. Wolf
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 445-8410

*Attorneys for Respondent Dunhill Staffing Systems, Inc.*

11