USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10-29-07_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
DUNHILL FRANCHISEES TRUST,                :
                                          :
                    Petitioner,           :    07 Civ. 6940
                                          :
        - against -                       :    **DECISION AND ORDER**
                                          :
DUNHILL STAFFING SYSTEMS,                 :
INC.,                                     :
                                          :
                    Respondent.           :
------------------------------ X

**VICTOR MARRERO, United States District Judge.**

Petitioner Dunhill Franchisees Trust (the "Franchisees")
brought this action in New York State Supreme Court, New York
County, seeking to confirm an award (the "Award")[1] rendered in
its favor by an arbitrator (the "Arbitrator") in a proceeding
commenced by respondent Dunhill Staffing Systems, Inc.
("Dunhill") pursuant to the parties' underlying franchise
agreement. (See Opinion and Award dated May 25, 2007,
attached as Ex. 1 of Affidavit of Jeffrey H. Wolf dated August
9, 2007 ("Wolf Aff.").) Dunhill removed the state action to
this Court, pursuant to 28 U.S.C. § 1441 et. seq., and now
moves pursuant to § 10 of the Federal Arbitration Act ("FAA"),
9 U.S.C. § 10, to vacate the Award. The Franchisees oppose the
motion. For the reasons described below, the motion to vacate
is DENIED and the Franchisee's petition to confirm the Award

---

[1] The Award was issued by Arbitrator Michael D. Friedman in the matter
entitled Dunhill Staffing Sys., Inc. V. Dunhill Franchisees Trust, Case
No. 13181 Y 01674 04.

is GRANTED.

## I.   **FACTS**

Dunhill is a company engaged in the business of providing temporary and permanent employment staffing services throughout the United States, both by means of its own operations and by franchised offices.   From 2000 to 2002 Dunhill entered into franchise agreements (the "Agreements") individually with the four persons who comprise the Franchisees.   The Agreements provide for New York law to govern any disputes.   In connection with entering into the Agreements, Dunhill provided to the Franchisees certain franchise disclosure materials required by applicable New York law and rules of the Federal Trade Commission ("FTC"), in particular a document entitled Uniform Franchise Offering Circular (the "UFOC").   The UFOC contained disclosures of information about Dunhill and its franchise business and disclaimers about the scope of Dunhill's representations concerning its operations and finances, as well as the Franchisees' acceptance of the terms of the UFOC.

Along with the UFOC, Dunhill also provided to the Franchisees a brochure containing marketing and self-promotional material describing Dunhill and its franchise system, and also including a disclaimer about the high risks associated with the business and the absence of guarantees of

-2-

success for an entrant into the industry. In addition, the Agreements contained an integration clause stating that its terms superseded all prior representations and understandings among the parties relating to the franchises, and that the Franchisees entered into the Agreements on the basis of their own due diligence and not as a result of any representations about Dunhill made by any Dunhill officer or agent contrary to the terms of the Agreements or other material provided by Dunhill to the Franchisees under applicable law.

The Agreements contain a general arbitration clause providing for binding arbitration, in accordance with the American Arbitration Association's ("AAA") Commercial Arbitration Rules, of "any and all" disputes relating to the Agreements and the parties' rights and responsibilities under them, including claims based on tort, contract or any applicable federal, state or local statute law, ordinance or regulation. (See Franchise Agreement for Permanent Placement Franchise, dated October 12, 2000, attached as Ex. 7 to Wolf Aff., at 32.)

In June 2004 Dunhill commenced arbitration proceedings against the Franchisees asserting breach of contract by their failure to pay or by underpayment of royalties due to Dunhill under the Agreements. The Franchisees filed an answer and asserted counterclaims that included breach of contract,

-3-

failure of consideration, fraud in the inducement, equitable right of set-off, and termination and rescission of the Agreements for cause. (See Respondents' Answering Statement and Counterclaims ("Answering Statement"), attached as Ex. 2 of Affidavit of Richard L. Rosen dated Aug. 27, 2007 ("Rosen Aff.").) The Arbitrator rendered his Award on May 25, 2007, finding that in the UFOC and marketing materials Dunhill had provided to the Franchisees in connection with entering into the Agreements, Dunhill omitted to state material facts known to Dunhill which, under the circumstances, operated as a fraud upon the Franchisees. As damages, the Award granted the four Franchisees varying amounts totaling $1,796,673.12 million, plus attorneys fees of $125,000 for each of them.

Dunhill's central argument in support of vacating the Award points out that the Award is grounded on a determination that Dunhill had failed to disclose in the UFOC and marketing materials that, as of a certain point in time, a Dunhill franchise was no longer a viable business opportunity for a new business entrant without prior experience. Dunhill contends, however, that in none of the Franchisees' filings did they assert such a claim, and because neither party had raised the issue which formed the basis for the Award, the Arbitrator essentially decided an issue that had not been placed before him. On this theory Dunhill argues that the

-4-

Award must be vacated because the Arbitrator exceeded the scope of his authority and manifestly disregarded applicable laws.

## II.  **DISCUSSION**

A.    STANDARD OF REVIEW

### 1.    Scope of Arbitrator's Authority

Section 10(a) of the FAA specifies the grounds upon which federal courts "may make an order vacating [an arbitration] award." 9 U.S.C. § 10(a). Pertinent to this case, § 10(a)(4) authorizes setting aside an award "where the arbitrators exceeded their powers...." Id.

The starting point for any judicial inquiry regarding the scope of an arbitrator's authority is the intention of the parties as manifested by the arbitration agreement. See Abram Landau Real Estate v. Bevona, 123 F.3d 69, 74 (2d Cir. 1997); Local 1199, Hospital and Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992). Federal policy promotes arbitration and establishes a strong presumption in favor of arbitration. Accordingly, an arbitration clause must be read broadly, and any doubts concerning whether its scope encompasses the asserted dispute should be resolved so as to warrant arbitration. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960); Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir.

2002) (stating that the Circuit Court has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)"). In applying these principles, the Second Circuit has repeatedly declared that "if an arbitrator offers even a barely colorable justification for his decision, we will not vacate it on the basis of a claim that he exceeded his authority by misinterpreting the parties' contract." United States Steel and Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

Here, the scope of arbitration under the parties' contract was broad, encompassing any dispute arising under the Agreements. Whether or not the Franchisees were justified in withholding fees from Dunhill, and asserting as a defense and counterclaim, when Dunhill invoked the arbitration clause, that Dunhill engaged in breach of contract or fraud, constitute issues that fall squarely within the Broad scope of the Agreements' arbitration clause and the Arbitrator's authority. Dunhill's challenge to the contrary fails because it offers an unduly strained and cramped reading of the Arbitrator's authority under the Agreements. In essence, it conflates a claim or general subject that undisputably is encompassed as a proper matter of arbitration under the terms of an agreement, with particular grounds, evidence, or theories the parties advance in support of or in opposition to

-6-

an asserted claim.   The argument also implies that although
the arbitrator is unquestionably empowered to adjudicate a
claim asserting fraud in general, he cannot resolve the
dispute on the basis of any valid and reasonably related legal
grounds of fraud the evidence arguably supports, but must
confine his decision within the narrowest parsing of the
issues the parties actually argue.   Such a rigid construction
does not comport with the broad reading the Court must accord
to the scope of an arbitration clause, especially one as
expansive as that contained in the Agreements. The Second
Circuit has rejected a similar argument. In Pike v. Freeman,
the Circuit Court upheld the confirmation of an award under
broad arbitration clause providing, as contained in the
Agreements in the instant action, for resolution of any
disputes by binding arbitration under the AAA rules. See 266
F.3d 78 (2d Cir. 2001). In rejecting respondent's contention
that the arbitrators had exceeded their authority in deciding
that the respondent was liable as a general partner because
the underlying agreement did not address whether the
respondent was a limited partner, the Second Circuit stated
that "it was well within the scope of the arbitration clause
for the arbitrators to decide under what theory or theories
[the respondent] should or could be held liable for the damage
suffered."   Id. at 86.

-7-

Here, the arbitration clause explicitly covered any claims grounded on allegations of breach of contract or tort. There can be no legitimate dispute, and in fact Dunhill does not expressly argue, that the scope of the arbitration agreement would not embrace a claim of fraud in the inducement to enter into the Agreements. Moreover, as Franchisees point out (1) the parties had agreed that the Arbitrator would issue a "standard" as opposed to a "reasoned" award, which thus would not require a formal articulation of the Arbitrator's findings of fact, conclusions of law, or reasons for his determination and (2) the parties did not submit to the Arbitrator any list of specific issues that were to be addressed and decided, and that thus would have circumscribed his authority to resolve the substantive defenses and counterclaims the Franchisees asserted.    The Arbitrator therefore possessed sufficient authority to adjudicate, based on the evidence presented, the particular claims alleged by the Franchisees, which specifically included, as Dunhill acknowledges, fraud in the inducement by misrepresentations to enter into the Agreements.

Fairly and broadly as it must be read, with any doubts resolved in favor of arbitrability, the Award articulates a sufficient basis to support a finding of common law fraud, one of the grounds (See Respondent Franchisees Trust's Pre-Hearing

-8-

Brief, dated Jan. 16, 2007 ("Franchisees' Pre-Hearing Brief"),
attached as Ex. 9 of Rosen Aff., at 2.) that the Arbitrator
noted was asserted in the Franchisees' counterclaims.  Under
New York law, "a fraud cause of action may be supported by
proof of the failure to reveal a material fact with the intent
to defraud another by inducing him or her to enter into a
contract."  Rudolph v. Turecek, 658 N.Y.S.2d 769, 771 (App.
Div. 3rd Dep't. 1997) (citing New York Univ. v. Continental
Ins. Co., 662 N.E.2d 763 (N.Y. 1995); Swersky v. Dreyer and
Traub, 643 N.Y.S.2d 33, 37 (App. Div. 1st Dep't. 1996); see
also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l
Ass'n, 731 F.2d 112, 123 (2d Cir. 1984) (noting that "[d]uring
the course of negotiations surrounding a business transaction,
a duty to disclose may arise ... where one party possesses
superior knowledge, not readily available to the other, and
knows that the other is acting on the basis of mistaken
knowledge.") (citing Frigitemp Corp. v. Financial Dynamic
Funds, Inc., 524 F.2d 275, 283 (2d Cir. 1975)).

In the section labeled "What this Case is About" in the
pre-hearing brief the Franchisees submitted, they describe the
significant decline Dunhill had been experiencing in various
aspects of its franchise business at the time the parties
entered into the Agreements, material conditions of which the
Franchisees alleged Dunhill had knowledge. (Franchisees' Pre-

Hearing Brief, at 3.)  Specifically, the Franchisees assert
that Dunhill, "in the context of the above referenced decline
and demise of its franchise system, made a wide variety of
egregious  and  unconscionable  misrepresentations  (and/or
omissions) to each of the Franchisees, which Dunhill knew or
should have known were false...." (Id. at 4.) (emphasis
added).  The Franchisees elaborated two categories into which
the  "misrepresentations  (including  omissions)"  fall,  and
alleged that they were induced to rely upon them in agreeing
to their detriment to join the Dunhill franchise system.  Id.
In essence, these allegations embody the elements of a cause
of action for fraud in the inducement by misrepresentations
and/or omissions and thus placed the claim squarely before the
Arbitrator, who was thus authorized to determine whether or
not  the  evidence  was  sufficient  to  support  a  finding  of
liability on that ground.

    Consistent with the applicable standards of a claim of
fraud, the Arbitrator articulated several specific findings
that he determined "the evidence at the hearings established"
(Award, at 2), and that are sufficient to satisfy the
doctrinal requirements of a cause of action for fraud in the
inducement by material omissions.  In the first paragraph
detailing his findings, the Arbitrator stated that "an
essential element of a contemporary franchise that is sold by

-10-

a franchiser and purchased by a franchisee consists of a viable business opportunity ... which a new entrant to the business can employ with the expectation of a reasonable chance at starting and establishing a successful business, though without any guarantee of success." Id.  In the last sentence of the same paragraph the Award notes that the evidence submitted by both parties demonstrated that "the increased chance of success" of start up franchises "is a significant factor in an entrepreneur's choice of purchasing a franchise rather than independently starting a business." Id.

In the follow separate paragraph, the Award states again that "[t]he evidence presented at the hearing established that:

> 1.  By December 2000 [Dunhill] knew or should have known that a Dunhill ... permanent placement franchise no longer presented an opportunity with a reasonable chance of success for a new entrant to the business, without prior experience in the industry;
>
> 2.  This information was not clearly set forth in [the UFOC] and marketing materials which were given to the [Franchisees] by [Dunhill]; and
>
> 3.  [Dunhill] intended that the [Franchisees] rely upon the statements contained in [the UFOC] and marketing materials...."

Id.

In what appears to be a new paragraph separate from the two immediately preceding, as Dunhill acknowledges (see Reply

-11-

Memorandum in Support of Motion to Vacate Arbitration Award, undated, at 2), the Arbitrator concludes: "Thus [Dunhill's] [UFOC] and marketing materials given to [Franchisees] omitted to state material facts, known to [Dunhill] which under the circumstances in their entirety operated as a fraud upon [the Franchisees]." Id. (Emphasis added.) Lending support to an inference that this paragraph stands separate from the two preceding paragraphs and that its findings relate back to both, the paragraph concludes with yet another factual finding that "[t]he evidence also established." Id. Specifically, the Arbitrator determined that the Franchisees "in the exercise of reasonable diligence would not have been able to discover the omitted material information prior to their acquiring their franchises and trying to make them into successful businesses." Id.

Dunhill reads the third paragraph, beginning with the word "Thus," to relate solely to the findings set forth in the three numbered subparagraphs immediately preceding it, and consequently argues that the Arbitrator there referred to only one omission of material fact: the information described in subparagraph "1" to the effect that by December 2000 Dunhill knew that for a new entrant without prior experience in the industry its franchise no longer presented an opportunity with a reasonable chance of success. The Franchisees contend that

-12-

the Arbitrator's reference in the third separate paragraph to
Dunhill's ommission of material "facts" demonstrates that the
Award was grounded on the absence more than just one item of
material information.

The Court regards Dunhill's reading of the Award as too
narrow, and finds another plausible construction of the
paragraphs in dispute that provides, at a minimum, arguable
ground supporting the Award.  The third separate paragraph
begins with the word "Thus," and follows the two preceding
full paragraphs both of which set forth findings which the
Arbitrator determined that the "evidence at the hearings
established." This structural sequence suggests that both of
the two paragraphs preceding "Thus" should be read together to
lead to and support the conclusion that follows "Thus" in the
third paragraph.  In this view, the Arbitrator's observation
in the first paragraph that "an essential element" of a
contemporary franchise "consists of a viable business
opportunity" takes on contextual importance.  Id.  It helps
explain the Arbitrator's subsequent finding that Dunhill's
knowledge that as of December 2000 its franchises in effect no
longer presented a viable business opportunity, as well as his
conclusion that Dunhill's failure to disclose this information
to the Franchisees, operated as a fraud upon them "under the
circumstances in their entirety."  Id.  The latter phrase

-13-

lends further support to an interpretation that the three paragraphs of findings should be read in tandem, as reflecting the Arbitrator's recognition that the fraud consisted not just of the omission of a single item of information, but of the omission specified in the subparagraph numbered "1" as well as other material facts in the context of "the circumstances in their entirety." Id.

The Court cannot overlook that a reference to a phrase as broad as "the circumstances in their entirety" cannot reasonably be read to limit the scope of the material facts misrepresented or omitted to only the omission described in the first numbered subparagraph. Rather, it should be construed to encompass and relate back to all other relevant evidence the Arbitrator cited in his findings, as well as what he reasonably may have found in the voluminous record of a 13-day trial to sustain a claim of fraud in the inducement.

Consequently, viewed as a whole, the three paragraphs articulating the Arbitrator's findings present a fuller and more coherent interpretation of the Award than Dunhill's unduly narrow proposition. Because the hearing evidence established that a franchise embodied as an essential element "a viable business opportunity," which the new franchisee could pursue with a reasonable chance of success, and also reflected that an increased chance of success constituted a

-14-

significant factor inducing a choice to purchase a franchise, Dunhill's failure to disclose to the Franchisees material information uniquely within Dunhill's knowledge that would have served as a basic consideration in their choice to purchase a franchise, and that in the exercise of reasonable diligence they could not have discovered, worked a fraud on the Franchisees.

In the Court's reading of the Award in the context of the entire record, the Arbitrator's decision is fully warranted by the broad scope of authority granted by the parties' arbitration agreement.

2.    Manifest Disregard of Law

The Second Circuit recognizes "manifest disregard of the law" as an additional ground to warrant a court's decision to vacate an arbitral award beyond those prescribed by FAA § 10(a).    See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002).    In recognition of the strong federal policy favoring arbitration as a means of resolving disputes, however, the application of this doctrine "is highly deferential and such relief is appropriately rare." Porzig v. Dresdner, Kleinwork, Benson, North America LLC, 497 F.3d 133, 139 (2d Cir. 2007) (citing Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)).

-15-

Accordingly, the Second Circuit narrowly circumscribes the grounds that justify vacating an award for manifest disregard of the law, placing the burden on the petitioner to demonstrate "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." Wallace, 378 F.3d at 189 (internal quotation marks omitted). Further elaborating on this standard, the court has stressed that to vacate an arbitral award it requires "'an overt disregard of the law and not merely ... an erroneous interpretation.'" Pike, 266 F.3d at 86 (quoting Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111-12 (2d Cir. 1993)). Such a finding would be satisfied "'where an arbitrator understood and correctly stated the law but proceeded to ignore it.'" Id. (quoting Fahnestock & Co. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991)). Accordingly, "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" Id. (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Dunhill points to several principles of law that it

-16-

contends were well-defined and clearly applicable and that the Arbitrator disregarded, specifically: (1) federal and state laws governing franchise disclosure; (2) contract law regarding integration and disclaimer clauses barring reliance on pre-contract representations; (3) federal law that does not recognize a private right of action against a franchiser for an alleged violation of the FTC franchise disclosure rules; and (4) the statute of limitations barring the claims of some of the Franchisees under the New York statute.

Dunhill then argues that neither the applicable FTC rule, 16 C.F.R. § 436.1[2], nor corresponding New York law pertaining to franchise disclosures, about which the Arbitrator was apprised, requires a franchiser to opine as to whether a franchise opportunity is viable to a prospective franchisee without experience in the industry, and that the common law requires nothing more than the duties prescribed by the federal and state standards. On this basis Dunhill contends that a franchiser's failure to disclose declining revenues, deteriorating financial condition, or shifts in the industry are not actionable.

Dunhill mischaracterizes the Arbitrator's findings and reasoning and overlooks applicable principles that justify the

---

[2] The relevant provisions of the CFR have changed since the parties filed their papers. The current rules regarding the type of information franchisors must disclosure are contained in 16 C.F.R. § 436.5.

Award and preclude vacating it.    First, Dunhill's argument

that the Arbitrator disregarded applicable law that creates no

duty on a franchiser to disclose its financial condition rests

entirely on the finding set forth in the first numbered

subparagraph of the Award, which determined that Dunhill knew,

at the time the transactions here at issue were entered into,

that its franchises no longer presented an opportunity with a

reasonable chance of success for a new and inexperienced

entrant into the business.     Dunhill stresses that the

Arbitrator disregarded applicable federal and state laws which

impose no duty on a franchiser to make such disclosure to a

prospective franchisee. But, as pointed out above in response

to Dunhill's challenge to the Arbitrator's authority to decide

this issue, Dunhill improperly views this subparagraph in

isolation and out of context with the rest of the Award.

As also noted, in the first paragraph of the findings the

Arbitrator stated that the hearing evidence established that

"an essential element" of a franchise "consists of a viable

business opportunity" which a new entrant into the business

can pursue "with the expectation of a reasonable chance" at

starting a successful business.    (Award, at 2).    This

statement forms the underpinning for the Arbitrator's

determination that Dunhill had knowledge of material

information and failed to disclose that its franchise no

-18-

longer presented a viable opportunity, and that this omission thus operated as a fraud upon the Franchisees.

On this analysis, it may or may not be the case that the Arbitrator considered and properly applied governing legal criteria. But that is not what the manifest disregard standard demands. What the Award reveals, succinct as it is, is that at a minimum the Arbitrator was "arguably construing or applying the contract, within the scope of his authority." United Paperworkers, 484 U.S. at 38. Even if he may have misapplied or made an erroneous interpretation of the law that Dunhill asserts was presented to him, that circumstance by itself would not justify vacating the award under the manifest disregard doctrine. That rule may be satisfied not when the arbitrator misunderstands or misapplies the law but where it is clear that he "'understood and correctly stated the law but proceeded to ignore it.'" Pike, 266 F.3d at 86 (quoting Fahnestock, 935 F.2d at 516).

Moreover, a careful reading of the Award reinforces that the legal principles the Arbitrator relied upon and articulated derive essentially from the common law elements of fraudulent concealment. See Swersky, 643 N.Y.S.2d at 36; Restatement (Second) of Torts § 551 (1977). Thus, the Arbitrator makes reference to the omission of material facts from the marketing materials Dunhill provided to the

-19-

Franchisees, to Dunhill's knowledge of the omission and of the true relevant information, to Dunhill's intention that the Franchisees rely upon the misleading information, and to the Franchisees' inability to discover the omitted material information by exercise of due diligence prior to their purchasing their franchises.[3]

Dunhill points out that nothing in the federal or state franchise law required Dunhill to provide the information the Arbitrator found Dunhill had omitted to disclose, that omissions cannot serve as grounds of fraud claims if there is no duty to disclose, and that the Arbitrator made no findings that Dunhill had failed to disclose any information required by law.  On this point, too, Dunhill reads the manifest disregard standard too narrowly.  Even if the Arbitrator made no mention of a specific finding of a legal duty to disclose, it does not follow that on this account his decision falls within the rigorous standard of manifest disregard of the law. First, an arbitrator's silence on a point does not necessarily equate to a finding of his having correctly understood and stated the law and then having proceeded to ignore it in its

---

[3] Court also notes that some of these elements are reflected also in § 687 of the New York General Business Law, entitled "Fraudulent and Unlawful Practices," which states that in connection with the offer, sale or purchase of any franchise, it is unlawful for any person to "(b) make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." N.Y. Gen. Bus. Law § 687 (McKinney's Gen. Bus. Law § 687).

application.  See Fahnestock, 935 F.2d at 516.  Arbitrators
are not required to give reasoned analysis for their
decisions, or any particular aspect of them, and thus "'The
absence of express reasoning by the arbitrators [does not]
support the conclusion that they disregarded the law.'"  Hough
v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 757 F. Supp.
283, 291 (S.D.N.Y. 1991), aff'd, 946 F.2d 883 (2d Cir. 1991)
(internal citations omitted).  That the Arbitrator explained
some elements of the law and omitted reference to others may
at best support an inference that he considered the law but
may have erroneously applied it.  As explained above, however,
that circumstance would not suffice to warrant a finding of
manifest disregard.

Finally, the Court notes that the common law regarding
fraudulent concealment recognizes that a duty to disclose
arises under the "special facts" doctrine "where one party's
superior knowledge of essential facts renders a transaction
without disclosure inherently unfair."  Swersky, 643 N.Y.S.2d
at 37 (internal citations omitted).  The Arbitrator's Award
could plausibly be read to embody such a determination insofar
as it finds that, at the time of the transactions, Dunhill
possessed the material information it omitted to disclose, but
that even in the exercise of reasonable diligence the
Franchisees would not have been able to discover all of the

-21-

essential facts.  On this basis, the Arbitrator's ruling may
be deemed sufficient to satisfy the requirements of common law
fraudulent  concealment.    See  Duferco,  333  F.3d  at  390
(declaring that "[w]e will ... not vacate an arbitral award
for  an  erroneous  application  of  the  law  if  a  proper
application of the laws would have yielded the same result.
In the same vein, where an arbitral award contains more than
one plausible reading, manifest disregard cannot be found if
at  least  one  of  the  readings  yields  a  legally  correct
justification for the outcome.") (citations omitted).

     The preceding analysis applies with equal force to
dispose of Dunhill's other grounds invoking the manifest
disregard of the law doctrine.  The Award makes no reference
to the integration and disclaimer clauses, nor to any of the
other principles of contract law Dunhill raises.   To the
extent the Arbitrator describes legal doctrine at all, the
ruling appears to rest on a theory of fraud.  While Dunhill
points out that the Arbitrator was apprised that legally the
Franchisees' claims were based on contract rather than fraud
causes of action, on this point as well there is no indication
in the Award that the Arbitrator correctly understood and
correctly stated the law and then proceeded to disregard it.
Again, at best, the Arbitrator may or may not have erred in
applying the proper law, but the Court cannot find that in

-22-

ruling as he did, the Arbitrator manifestly disregarded the law under the principles described above.

### 3.    Attorneys' Fees

Dunhill next argues that the Arbitrator's award of attorneys' fees must be vacated because in making it he exceeded his authority.  In this regard Dunhill points to a provision in the Agreements which calls for the Franchisees to reimburse Dunhill for costs and expenses, including attorneys' fees, in the event Dunhill employs counsel to enforce compliance with the Agreements.  The Agreements contain no parallel provision with regard to claims made by the Franchisees against Dunhill.

Dunhill overlooks, however, that the arbitration clause in the Agreements provides that the parties are to submit any disputes arising under the Agreements to binding arbitration in accordance with the AAA's Commercial Rules, of which  Rule 43(d) provides that "[t]he award of the arbitrator(s) may include: an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." (See Memorandum in Support of Motion to Vacate Arbitration Award, undated, at 20).

Here, the Franchisees point out that in their Answering Statement they affirmatively requested an award of attorneys' fees.  More specifically, in the Schedule of Damages attached

-23-

to their Pre-Hearing Brief, the Franchisees listed an amount of claimed attorneys' fees of $125,000 for each of the four Franchisees, which corresponds precisely to the $500,000 total attorneys' fees award the Arbitrator granted. Accordingly, Dunhill had sufficient notice of the demand and the amounts initially requested. The Arbitrator apparently relied upon and accepted this request, and not, as Dunhill contends, the greater and more detailed amount claimed in the Franchisees' post-trial submission, which Dunhill asserts it did not have sufficient opportunity to challenge.

Dunhill relies on cases that enforce contract provisions which authorize one party to recover attorneys fees without granting a reciprocal right to the other party. See, e.g., In re Arbitration Between UBS Warburg LLC, 744 N.Y.S.2d 364 (App. Div. 1st Dep't. 2002). The Court finds such cases inapposite, as they do not involve the precise circumstances presented in the proceeding at hand. Here, though the Agreement specifically authorizes Dunhill to seek reimbursement for counsel's fees in connection with any enforcement action Dunhill commences arising under the franchise, at the same time it incorporates the Commercial Arbitration Rules of the AAA to govern arbitration proceedings. Dunhill makes no effort to acknowledge the existence of this clause or to reconcile it with the provision on which Dunhill relies. In

-24-

fact, the two provisions are not necessarily irreconcilable. The clause, which Dunhill invokes has much wider application in that it enables Dunhill to seek attorney's fees in any type of enforcement action it brings against the Franchisees in any forum, without comparable right for the Franchisees. On the other hand, the arbitration clause is narrower, insofar as it would entitle either party to claim an award of attorneys' fees only in arbitration proceedings. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)(where two provisions of a contract conflict, the court construing the agreement should endeavor to adopt a reading that gives effect to both provisions); see also Warner Bros. Records v. PPX Enterprises Inc., 776 N.Y.S.2d 269 (App. Div. 1st Dep't. 2004) (affirming an award of legal fees where an arbitral agreement did not specifically provide for attorneys' fees in the event of a dispute, but did incorporate the AAA Commercial Arbitration Rules, including Rule 43(d), which authorized such an award where all parties requested it and both parties in the arbitration had so requested).

Under these circumstances the Court finds that the Arbitrator did not exceed the scope of his authority or applicable law. Accordingly, the Court rejects Dunhill's claim that the Award of attorneys' fees should be vacated on this ground.

## III.  ORDER

For the reasons described above, it is hereby

**ORDERED** that the motion (Docket No. 4) of respondent Dunhill Staffing Systems, Inc. ("Dunhill") to vacate the arbitration award of May 25, 2000 (the "Award") rendered in favor of petitioner Dunhill Franchisees Trust (the "Franchisees") is DENIED, and it is further

**ORDERED** that the petition of the Franchisees to confirm the Award is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:     New York, New York
           29 October 2007

VICTOR MARRERO
U.S.D.J.

-26-